**Lawrence Wm. JORDAN,
Plaintiff-Appellant,**

v.

**The CITY OF LAKE OSWEGO, a
municipal corporation, et al.,
Defendants-Appellees.**

No. 83–3811.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 5, 1984.

Decided June 8, 1984.

Lawrence William Jordan, P.C., Salem, Or., pro se.

Jeffrey M. Batchelor, Spears, Lubersky, Campbell & Bledsoe, Portland, Or., for defendants-appellees.

Before KILKENNY, WALLACE and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Jordan brought a civil rights action for damages, pursuant to 42 U.S.C. § 1983, against the City of Lake Oswego (City), alleging that his fourteenth amendment due process rights were violated when he was discharged as city attorney. Jordan moved for summary judgment and the City cross moved, arguing that Jordan received all the process constitutionally due him. The district court denied Jordan's motion and granted the City's, then dismissed the action. Jordan appeals and we affirm.

## FACTS

Jordan was appointed for a four-year term as City Attorney of Lake Oswego by the City Council on January 4, 1977. As City Attorney, Jordan was subject only to the Council's supervision. As part of the duties of his office, Jordan was legal advisor to all department heads, the city manager, Planning Commission, the Council, mayor, grievance committee, and others. City Charter § 21a(b)(3).

In April.1978, Jordan received a performance evaluation from the City Council which revealed dissatisfaction with Jordan's performance of his professional duties. The mayor met with Jordan to review the evaluation and Jordan was placed on 90-day probation with a second evaluation to follow. A September 1978 evaluation showed continued dissatisfaction with Jordan's performance. Jordan requested and received a full public hearing with the Council members on September 12, 1978, at which time he responded to specific criticisms. He was again placed on 90-day probation and a scheduled pay raise was not awarded.

In October 1978, Jordan sued the City Council to get the pay raise which had been withheld. Because the City Attorney's Office was responsible for the defense of all actions against the City, the Council hired outside counsel to defend the suit. The suit was dismissed in December 1978.

On November 7, 1978, the Council met in "executive" session to discuss the suit filed against the City by Jordan. The Council concluded that the filing of the suit represented a conflict of interest on Jordan's part and required the City to find another City Attorney. The Council decided to commence termination proceedings against Jordan.

On December 6, 1978, the Mayor sent Jordan a letter advising him of a December 19 meeting at which his dismissal as City Attorney would be considered. Specific grievances were listed. The letter indicated that Jordan could request this meeting to be an open hearing. On December 13, 1978, Jordan responded by letter to the mayor denying the charges and challenging the Council's authority to fire him.

The meeting convened on December 19. Just prior to the meeting, Jordan delivered a letter stating that he refused to participate in the hearing. He then left. The Council proceeded with the hearing to document charges against Jordan and dismissed him effective the next day.

## DISCUSSION

In the first step of a two part analysis, the district court correctly concluded, and the City does not dispute, that Jordan did have a property interest in his four year term as City Attorney and therefore was entitled to the protections afford-

ed by procedural due process. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The next step in the analysis requires us to weigh the competing interests of Jordan and the City to determine what protective process is constitutionally required. Due process only requires a meaningful hearing appropriate to the nature of the case. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

■ The factors which are balanced in determining the process which is appropriate to protect a property interest include:

first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of [a property] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 367 (9th Cir.1976) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

We examine first Jordan's property interest in retaining his job. His concerns include maintaining his income, continuing his employment, and protecting his professional reputation. Against these factors we weigh the City's interests in being able, quickly and inexpensively: (1) to resolve personnel disputes in order to promote efficiency and economy, (2) to deal with debilitating personal frictions, and (3) to resolve conflicts of interest.

These interests are not weighed in a vacuum and must be assessed in the light of the unique relationship between Jordan and the City. Jordan was required as City Attorney to maintain a very close and confidential working relationship with the City

Council. In that kind of relationship there is a mutual need for cooperation, trust, and positive relations. Thus when personal frictions, dissatisfaction, and conflicts of interests arise, there is a very compelling and weighty interest in bringing the relationship to a rapid end with a minimum of procedural delay. *See Stretten v. Wadsworth Veterans Hospital,* 537 F.2d at 368–69.

■ Minimum procedural delay, however, does not mean a complete lack of procedural safeguards. Jordan's interests are such that at a minimum he must receive written notice of charges, notice of a hearing at which he has the opportunity to rebut the charges and evidence against him, and a reasonable decisionmaker who would not act arbitrarily or capriciously and who would base the decision upon the evidence presented at the hearing.[1] *See Stretten,* 537 F.2d at 367–69.

Whether further procedural safeguards are necessary requires an examination of the remaining two *Mathews* factors. We agree with the district court that in this case there is little risk of an erroneous deprivation of a property interest through the use of minimum pretermination procedures. The minimal value of additional or substitute safeguards is obvious when compared to the compelling need quickly to terminate a conflict-laden and counterproductive professional relationship.

■ Jordan received two performance evaluations and private and public hearings before he was notified of the Council's intent to consider his termination. He then received written notice of the charges, and an opportunity for a public hearing at which he could offer evidence to rebut the case against him. That he chose not to avail himself of this opportunity does not detract from our conclusion that the procedures utilized prior to his termination were sufficient to accord with the due process requirements of the federal Constitution.

---

**1.** Jordan's claim that he was denied due process because he did not have an independent decisionmaker is without merit. There is no constitutional requirement that the decisionmaker be an uninvolved person when a property interest

protected by due process is at stake. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 369 n. 18 (9th Cir.1976).

The City urges res judicata as an alternate ground for affirmance. It argues that Jordan's section 1983 action should have been joined with his two prior state court actions challenging his dismissal. *Migra v. Warren City School District,* — U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), lends powerful support to the City's contention. There is serious question, however, whether either of these state actions was decided on the merits. There is also some question whether the conflicting positions taken by the state courts in Jordan's two actions resulted in Jordan's not being provided a full and fair opportunity to litigate his federal claim. *See id.,* at ——, 104 S.Ct. at 896 (quoting *Allen v. McCurry,* 449 U.S. 90, 97–99, 101 S.Ct. 411, 416–417, 66 L.Ed.2d 308 (1980)). In any event, because we have chosen to affirm on other grounds, we need not reach the res judicata issue.

AFFIRMED.