**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRESLIE HARDWICK,
　　　　*Plaintiff-Appellee*,

v.

COUNTY OF ORANGE,
　　　　*Defendant*,

and

MARCIA VREEKEN; ELAINE
WILKINS; THE ESTATE OF
HELEN DWOJAK,
　　　　*Defendants-Appellants.*

No. 15-55563

D.C. No.
8:13-cv-01390-JLS-AN

OPINION

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted October 7, 2016
Pasadena, California

Filed January 3, 2017

Before: Stephen S. Trott, John B. Owens,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Trott

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's denial, on summary judgment, of absolute and qualified immunity to social workers who plaintiff alleged maliciously used perjured testimony and fabricated evidence to secure plaintiff's removal from her mother, and that this abuse of state power violated her Fourth and Fourteenth Amendment constitutional rights to her familial relationship with her mother.

The panel held that the social workers were not entitled to absolute immunity from claims that they maliciously used perjured testimony and fabricated evidence to secure plaintiff's removal. The panel held that plaintiff's complaint targeted conduct well outside of the social workers' legitimate role as quasi-prosecutorial advocates in presenting the case.

The panel held that defendants' case for qualified immunity was not supported by the law or the record. The panel determined that plaintiff produced more than sufficient admissible evidence to create a genuine dispute as to whether her removal from her mother's custody violated her constitutional rights. The panel further stated that it could not conceive of circumstances in which social workers would not know and understand that they could not use criminal behavior in any court setting to interfere with a person's fundamental constitutional liberty interest.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Pancy Lin (argued) and Norman J. Watkins, Lynberg & Watkins, Orange, California, for Defendants-Appellants.

Dennis Ingols (argued) and Robert R. Powell, Law Offices of Robert R. Powell, San Jose, California, for Plaintiff-Appellee.

---

**OPINION**

TROTT, Senior Circuit Judge:

**I**

**Exposition**

Pursuant to an order of the Superior Court of Orange County California, arising from acrimonious juvenile dependency proceedings, Deanna Fogerty-Hardwick lost custody of her minor children, Preslie and Kendall. In this subsequent civil rights action brought under 42 U.S.C. § 1983, Preslie Hardwick sued the County and employees of its Social Services Agency ("SSA"). She contends that the social worker employees acting under color of state law maliciously used perjured testimony and fabricated evidence to secure her removal from her mother, and that this abuse of state power violated her Fourth and Fourteenth Amendment constitutional rights to her familial relationship with her mother.

In a motion for summary judgment, the individual defendants unsuccessfully raised absolute and qualified immunity as shields against this action. They appeal,

claiming, among other things, that the law Preslie accuses them of violating was not "clearly established" at the time their allegedly wrongful conduct occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

We have jurisdiction over this timely interlocutory appeal pursuant to 28 U.S.C. § 1291, *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43 (1982) (absolute immunity), and *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (qualified immunity). We affirm.

## II

## Background

This lawsuit is not the first stemming from the implosion of Preslie's family. Her mother, Deanna, successfully sued some of the social workers in state court for the same conduct and pursuant to the same legal theory, and she recovered a sizable sum in damages plus attorneys' fees. *See Fogarty-Harwick v. County of Orange*, No. G039045, 2010 WL 2354383, at *1 (Cal. Ct. App. June 14, 2010) (remanding to trial court with directions to strike injunctive relief from the judgment and affirming judgment in all other respects). To quote the California Court of Appeal,

> In this case, the jury specifically concluded that Vreeken and Dwojak lied, falsified evidence and suppressed exculpatory evidence–all of which was material to the dependency court's decision to deprive Fogarty-Hardwick of custody–and that they did so with malice. These findings are clearly sufficient to satisfy the Supreme Court's

definition of circumstances in which 'qualified immunity would *not* be available.'

*Id.* at \*14.

The Court of Appeal also acknowledged the defendants' collective admission on appeal that the evidence was sufficient "to demonstrate the social workers committed egregious acts of misconduct in the dependency case." *Id.* at \*10. The court said, "As the County concedes, '[Fogarty-Hardwick] demonstrated (if the testimony is to be believed) that in this one instance, social workers lied and fabricated evidence in connection with the dependency proceedings relating to [her] children.'" *Id.* at \*10, n.4 (alteration in original).

## III

## Scope and Standard of Review

This matter comes to us as an interlocutory appeal involving only legal issues regarding the employees' claims of an entitlement to immunity from this lawsuit. We do not comment on or express any opinions about the merits of the case. Those are ultimately for the district court to resolve. In this context, however, and because they are supported by the record as a whole, we construe the facts Preslie offers in support of her allegations in the light most favorable to her. *Scott v. Harris*, 550 U.S. 372, 380 n.8 (2007). Accordingly, we proceed to review *de novo* the legal issues that are before us. *White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007) (grant of partial summary judgment reviewed *de novo*).

## IV

## Absolute Immunity

Absolute immunity from private lawsuits covers the official activities of social workers only when they perform quasi-prosecutorial or quasi-judicial functions in juvenile dependency court. *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (en banc). The factor that determines whether absolute immunity covers a social worker's activity or "function" under scrutiny is whether it was investigative or administrative, on one hand, or part and parcel of presenting the state's case as a generic advocate on the other. Absolute immunity is available only if the function falls into the latter category. *See id.* at 896.

Here, Preslie tells us that the social workers' malicious activities about which she complains are as follows:

1) The allegedly false statements and omissions made in defendants' court reports continuously submitted by them from February 17, 2000, through the termination of the dependency proceedings;

2) The statements made by the defendant social workers during an "off the record" discussion on February 17, 2000, and during an "on the record" discussion that same day where the social workers allegedly lied (but not while under oath) to the commissioner overseeing the dependency proceeding, triggering Preslie's seizure;

3) The alleged fabrication of evidence throughout the dependency proceedings and repeated suppression of

exculpatory evidence in defendants' written court reports; and

4) Defendants' corrupt recommendations that Preslie continue to be detained even though defendants allegedly knew they were lying to the court about the basis for the initial seizure and subsequent detention.

To be specific, the defendants' actions Preslie intends to prove as false and fabricated include (1) telling the dependency court on February 17, 2000, that Deanna had caused her daughters to skip a mandatory visit with their father, when in fact the problem was caused by a visitation monitor, Hector Delgadillo; (2) advising the court that Deanna was responsible for turning her children against the monitor; and (3) telling the court that Deanna had told her children that their father was trying to take them away from her when in reality it was defendant Vreeken who had made inappropriate comments to the children, including the threat that if they did not visit their father, they would be put "in a home."

On the basis of this alleged misinformation, the dependency court concluded that Deanna was "using" her children. Accordingly, the court immediately removed the girls from her custody and turned them over to the SSA and the defendants. Preslie and her sister were sent to the Orangewood Children's Home. On February 23, 2000, the court authorized the return of the girls to their mother's custody, but the social workers refused and placed them instead in foster care where they remained until May 2000.

Preslie's complaint targets conduct well outside of the social workers' legitimate role as quasi-prosecutorial

advocates in presenting the case. Our opinion in *Beltran v. Santa Clara County*, 514 F.3d 906 (9th Cir. 2008) (en banc) (per curiam) disposes of this issue. We held in *Beltran* that social workers may well have absolute immunity when discharging functions that are "'critical to the judicial process itself,' . . . [b]ut they are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." 514 F.3d at 908 (quoting *Miller*, 335 F.3d at 896). Accordingly, we affirm the district court's denial to these defendants of absolute immunity.

## V

## Qualified Immunity

### A.

### Collateral Estoppel

Preslie claims collateral estoppel, or issue preclusion, against these defendants on the ground that qualified immunity was conclusively litigated to a final decision in California courts, in which they did not prevail. However, because we come to the same conclusion as the state courts, we need not decide whether offensive collateral estoppel bars these defendants from raising qualified immunity in their defense. *See Jordan v. City of Lake Oswego*, 734 F.2d 1374, 1377 (9th Cir. 1984); *Rayner v. NLRB*, 665 F.2d 970, 976 n.7 (9th Cir. 1982).

## B.

## Preslie's Constitutional Rights

"Parents and children have a well-elaborated constitutional right to live together without governmental interference.  That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) (citations omitted).

Over the years, the Supreme Court has recognized this fundamental right in many cases.  For example, in *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639–40 (1974), the Court said, "This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."  The Court reiterated this theme three years later in *Moore v. City of East Cleveland*, 431 U.S. 494, 503–04 (1977): "Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition.  It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural."

The defendants do not contend – nor could they – that Preslie did not have a constitutional Due Process right or a Fourth Amendment right protecting her against deliberate government use of perjured testimony and fabricated evidence in the dependency court proceeding designed to rupture her familial relationship with her mother.  This right

is beyond debate. What they do claim is that the specific granular right to be free from deliberately fabricated evidence in *civil* child dependency proceedings where a parent's or child's protected familial liberty interest is at stake had not yet been "clearly established" prior to the dependency proceeding at issue. They concede that the rights Preslie relies upon had been clearly established in *criminal* proceedings against parents, but not yet in a civil proceeding context. We disagree.

## C.

### "Clearly Established"

An official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his or her] shoes would have understood that he [or she] was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation marks omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Furthermore, "general statements of the law are not inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule

already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Id.* at 741 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997) (quoting *Anderson*, 483 U.S. at 640)). Thus, the "salient question" we must answer is "whether the state of the law [as of February, 2000, when the conduct at issue allegedly occurred] gave [these social workers] fair warning" that their alleged use of perjured testimony and fabricated evidence in court in order to sever Preslie's familial bond with her mother was unconstitutional. *Hope*, 536 U.S. at 741.

The Supreme Court did not confine its inquiry in *Hope* to published judicial opinions. The Court also referred to the "obvious cruelty" inherent in the disputed practice that "should have provided respondents with some notice that their alleged conduct violated [the plaintiff's constitutional protection]." *Hope*, 536 U.S. at 745.

To buttress its conclusion that a reasonable person would have known of the unconstitutionality of the disputed practice, the Court also relied on (1) a "relevant" shackling regulation promulgated by the Alabama Department of Corrections ("ADOC"), and (2) a United States Department of Justice report warning the ADOC of the unconstitutionality of the disputed practice. *Id.* at 743–45.

## D.

## Development

Although it did so in the context of discussing collateral estoppel, the district court correctly identified the legal

precedents that inform our analysis, beginning with *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), vacated in part on other grounds by *Camreta v. Greene*, 563 U.S. 692 (2011). As the district court said,

> the plaintiff [in *Greene*] alleged her children were removed from her custody 'pursuant to a Juvenile Court order triggered by an intentional misrepresentation' in an affidavit by the defendant social worker. The Ninth Circuit held that the plaintiff's 'right to be free from deception in the presentation of evidence during a protective custody proceeding was clearly established at the time [defendant] filed his affidavit [in 2003] with the Juvenile Court.'

And, as the district court correctly observed, "*Greene* reached this conclusion on the basis of previous case law establishing the basic 'constitutional right to be free from the knowing presentation of false or perjured evidence.'" *Id.* (quoting *Greene*, 588 F.3d at 1035).

Nevertheless, the defendants contend that *Greene* is irrelevant because (1) the offending affidavit in that case was filed in March of 2003, and (2) we did not publish our opinion until 2009. True, but *Greene* relied in turn on cases dealing with conduct that occurred well before the conduct challenged in this case. For example, the *Greene* panel pointed to *Devereaux v. Perez*, 218 F.3d 1045 (9th Cir. 2000), reh'g en banc sub nom. *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001). The targeted conduct in *Devereaux* took place during 1994 and 1995. In *Greene*, we said that "we held in the context of a child abuse proceeding that 'the

constitutional right to be free from the knowing presentation of false or perjured evidence' is clearly established." 588 F.3d at 1035 (citing and quoting *Devereaux*, 218 F.3d at 1055–56). We also said that "[e]ven earlier [than *Devereaux*] we stated emphatically that 'if an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth, . . . he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.'" *Id.* (describing and quoting *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995)). Finally, we supported our holding in *Greene* with a section 1983 case decided in 1990 by the Tenth Circuit, *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990). We described that civil rights case as "holding [that] social workers who deliberately fabricated evidence of child sexual abuse to secure a removal order [were] not entitled to qualified immunity." *Greene*, 588 F.3d at 1035.

Contrary to the defendants' assertion at oral argument that *Snell* arose from criminal process, it did not. The alleged offending social workers in *Snell* were employed by the Oklahoma Department of Human Services. The disputed court order they secured from a judge was a "pick-up" removal order pertaining only to civil child dependency concerns. *Snell*, 920 F.2d at 687–88. The child removal order had no connection with a criminal investigation or prosecution. In fact, the district attorney, the local police, and the FBI all declined to initiate criminal process or proceedings. *Id.* at 677, 681–83, 691.

No official with an IQ greater than room temperature in Alaska could claim that he or she did not know that the conduct at the center of this case violated both state and

federal law. The social workers in this case are alleged to have knowingly and maliciously violated the law in their attempt to sever Preslie's protected relationship with her mother. Perjury is a crime under both federal and California state law, as is the knowing submission of false evidence to a court. 18 U.S.C. § 1621; Cal. Penal Code § 118. Both crimes make no distinction between criminal and civil proceedings. This malicious criminal behavior is hardly conduct for which qualified immunity is either justified or appropriate. The doctrine exists to protect mistaken but reasonable decisions, not purposeful criminal conduct. As the Supreme Court repeated in *Sheehan*, officials who knowingly violate the law are not entitled to immunity. 135 S. Ct. at 1774 (quoting *Ashcroft*, 131 S. Ct. 2085).

When asked about these legal facts during oral argument, the following colloquy occurred:

> Judge Trott: Are you telling me that a person in your client's shoes could not understand you cannot commit perjury in a court proceeding in order to take somebody's children away?
>
> Answer: Of course not.
>
> Judge Owens: Was there anything you know of that told social workers that they should lie and they should create false evidence in a court proceeding?

Answer:        No . . . .

In Fourth Amendment excessive force cases, often the disputed force used turns out under examination not to have been excessive.  In Eighth Amendment cruel and unusual punishment cases, the same is true.  A punishment imposed may not be either cruel or unusual.  But there is no such thing as a minor amount of actionable perjury or of false evidence that is somehow permissible.  Why?  Because government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts.  Furthermore, the social workers' alleged transgressions were not made under pressing circumstances requiring prompt action, or those providing ambiguous or conflicting guidance.  There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent.

But there is more to establish that these social workers had "fair warning" of the unconstitutionality of their conduct.  The California Government Code has addressed the very acts alleged in this case with a statute enacted in 1995.  The Code says,

> (a)  [T]he civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to [the Cal. Welfare and Insts. Code] shall not extend to any of the following, if committed with malice: (1) Perjury. (2) Fabrication of evidence.  (3) Failure to disclose known exculpatory evidence.

(4) Obtaining testimony by duress . . . fraud
. . . or undue influence . . . .

(b) '[M]alice' means conduct that is intended
. . . to cause injury to the plaintiff or
despicable conduct that is carried on . . . with
a willful and conscious disregard of the rights
or safety of others.

Cal. Gov't Code § 820.21.

Section 820.21 did not come about because of someone's
academic concern about possible wrongful conduct by social
workers in connection with dependency proceedings. The
Bill, Assemb. B. 1355, 1995–96 Reg. Sess. (Cal. 1995) ("AB
1355") was the direct result of a notorious case, *James W. v.
Super. Ct.*, 21 Cal. Rptr. 2d 169 (Cal. Ct. App. 1993), wherein
the trial court granted absolute immunity for egregious acts
resulting in the removal of a child from her family. Although
the trial court was reversed on appeal, the issue generated
statewide concern. AB 1355 was hotly debated and opposed
by the County Welfare Directors, the National Association of
Social Workers, the California State Association of Counties,
the California Independent Public Employees Legislative
Council, Inc., and the California State Council of the Service
Employees International Union. *See* Cal. B. Analysis,
1995–96 Reg. Sess., Assemb. B. 1355 (Sept. 8, 1995). We
find it utterly implausible that social workers in California
were not aware in 1999 of this recent change in the law.

Just as the Court in *Hope* used an ADOC regulation and
a DOJ report to support its conclusion that the officials were
on fair notice of the wrongfulness of their conduct, here, a
pertinent state statute warns defendants in unmistakable

language of the personal consequences of lies, perjury, and deception: the loss of immunity for such conduct. Furthermore, the statute focuses on behavior designed wrongfully to affect dependency proceedings in court, the citadel of Due Process.

We believe this is the kind of case the Supreme Court had in mind in *Hope* when it talked about conduct so clearly and obviously wrong that the conduct itself unmistakably "should have provided [defendants] with some notice" that their alleged conduct violated their targets' constitutional rights. 536 U.S. at 745. As the Supreme Court explained in *Lanier*, 520 U.S. at 271,

> As Judge Daughtrey noted in her dissenting opinion in this case: "The easiest cases don't even arise. There has never been . . . a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability."

(citations and internal quotation marks omitted) (alterations in original). Try as we might, we cannot conceive of circumstances in which social workers would not know and understand that they could not use criminal behavior in *any* court setting to interfere with a person's fundamental constitutional liberty interest. Their deportment as alleged by Preslie could not have reasonably "been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638.

**E.**

***Costanich***

The defendants insist that the law they are alleged to have violated was not clearly established by February 2000. To support this assertion, they rely on our opinion in *Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101 (9th Cir. 2010). Defendants contend that *Costanich* dealt with the same familial association rights as the rights at issue here. We disagree. The interest at issue in *Costanich* derived from state statutes and was materially different from the fundamental constitutional liberty interest in this case, and different in a pellucid manner that directly affects what a social worker would comprehend about that interest.

In *Costanich*, the social workers' target was a person with a foster care license, not a legal parent. Kathie Costanich had custody of three foster children plus three under dependency guardianships. The officials waived in the district court the argument that Ms. Costanich lacked a protected interest, and thus we assumed, without deciding, that she had such an interest before proceeding to the question of whether the officials violated her constitutional rights. 627 F.3d at 1110, 1114 n.13, 1116 n.15.

We concluded that "there are sufficient distinctions between criminal prosecutions and civil *foster care* proceedings that the right had not yet been clearly established in the civil context." *Id.* at 1116 (emphasis added). We recognized that "foster care licensees' and custodial guardians' interests do not rise to the level of a criminal defendant's interests, which are clear and long established." *Id.* at 1115.

Like the interests of criminal defendants, the fundamental liberty interests of parents and their children in their familial relationship has long been clearly established. *See*, *e.g.*, *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (explaining that the Fourteenth Amendment protects the liberty to " establish a home and bring up children"); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925) (recognizing the right of parents "to direct the upbringing and education of children under their control"); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (acknowledging that "the custody, care and nurture of the child reside first in the parents"); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (observing that a parent has a protected interest in the "companionship, care, custody, and management of his or her children").

A foster parent's interest is derived from the state and may differ according to state law and particular circumstances. *See Smith v. Org. of Foster Families for Equal. and Reform*, 431 U.S. 816, 845–46 (1977) ("[W]here . . . the claimed interest derives from a knowingly assumed contractual relation with the State, it is appropriate to ascertain from state law the expectations and entitlements of the parties."). In contrast, the fundamental liberty interests of a legal parent and her child do not depend on, nor are they subject to, such individualized assessment. It stands to reason that a social worker might not know whether a person with only foster care and dependency guardianship custody of children would have a constitutional right in that statutory legal relationship. It does not stand to reason that a social worker would be unaware of the fundamental liberty interests at stake involving legal parents and their children, interests protected in court by Due Process of law. Accordingly, we conclude that *Costanich* is distinguishable and not controlling.

# VI

## Recapitulation

Preslie has produced more than sufficient admissible evidence to create a genuine dispute as to whether her removal from her mother's custody violated her constitutional rights. Also, the defendants' case for qualified immunity from these charges is not supported by the law or the record. Accordingly, the matter shall proceed in the district court to a final judgment.

**AFFIRMED.**