**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SYDNEY RIEMAN; K. B., a minor by and through his Guardian Ad Litem, Steven L. Rieman,

*Plaintiffs-Appellees*,

v.

GLORIA VAZQUEZ; MIRTA JOHNSON,

*Defendants-Appellants*,

and

DOES, 2-10 inclusive; KRISTINE BROWN, also known as Doe 2,

*Defendants*.

No. 22-56054

D.C. No.
5:20-cv-00362-
CBM-SP

AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted December 4, 2023
Pasadena, California

Filed March 5, 2024
Amended April 2, 2024

Before:  CARLOS T. BEA, MILAN D. SMITH, JR., and
LAWRENCE VANDYKE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Social Worker Immunity

    The panel affirmed the district court's denial of absolute and qualified immunity to two County of San Bernardino social workers in an action brought pursuant to 42 U.S.C. § 1983 by Sydney Rieman and her child, K.B., by and through his guardian ad litem Steven Rieman, alleging that defendants violated plaintiffs' Fourth and Fourteenth Amendment rights by (1) failing to provide them with notice of a juvenile detention hearing in which the County's Child and Family Services sought custody of K.B.; and (2) providing false information to the Juvenile Court about why Ms. Rieman was not noticed for the hearing.

    The panel rejected defendants' assertion that they were entitled to absolute immunity for actions taken in their quasi-prosecutorial role as social workers. Although social workers may enjoy absolute immunity from suit for discretionary, quasi-prosecutorial decisions to institute court

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

dependency proceedings to take custody away from parents, here neither the actions nor omissions for which defendants were being sued—i.e., providing false information to the Juvenile Court and failing to give notice of the detention hearing—were similar to discretionary decisions about whether to prosecute. Moreover, absolute immunity did not apply to the Riemans' claim that defendants failed to give them notice of the detention hearing as such notice was mandatory and, therefore, unlike the discretionary decision to initiate prosecution.

The panel held that defendants were not entitled to qualified immunity from suit for failing to provide notice of the hearing. Ms. Rieman had a due process right to such notice and that right was clearly established. It was clear at the time that parents could not be summarily deprived of the care and custody of their children without notice and a hearing, except when the children were in imminent danger.

The panel held that defendants were not entitled to qualified immunity for their misrepresentation to the Juvenile Court about why Ms. Rieman was not noticed for the hearing. A reasonable social worker in defendants' shoes would have understood, based on prior decisional law, that providing incomplete and false information to the Juvenile Court about Ms. Rieman's whereabouts to convince the court that the social workers had satisfied the due process notice requirement constituted judicial deception.

## COUNSEL

Donnie R. Cox (argued), Law Office of Donnie R. Cox, Carlsbad, California; Sarah E. Marinho, Marinho Law Firm, San Jose, California; Paul W. Leehey, Law Office of Paul W. Leehey, Fallbrook, California; for Plaintiffs-Appellees.

James C. Jardin (argued), Collins and Collins LLP, Orange, California; Adam A. Ainslie, Collins and Collins LLP, Pasadena, California; Christie B. Swiss, Collins and Collins LLP, Carlsbad, California; for Defendants-Appellants.

## OPINION

M. SMITH, Circuit Judge:

Sydney Rieman (Ms. Rieman) and her child, K. B., a minor by and through his guardian ad litem, Steven L. Rieman, filed suit pursuant to 42 U.S.C. § 1983, alleging that social workers Mirta Johnson and Gloria Vazquez, among others, violated the Riemans' constitutional rights. Vazquez and Johnson appeal from the district court's order denying them absolute and qualified immunity. We affirm.

### FACTUAL BACKGROUND

On the afternoon of September 6, 2018, twenty-day-old K. B. fell off the bed where Ms. Rieman had placed him shortly before she went to the bathroom to wash her hands. According to Ms. Rieman, she did not see what precipitated the fall. Upon witnessing the fall, Ms. Rieman and her mother rushed K. B. to the nearest hospital, High Desert Medical Center (HDMC). The medical personnel at HDMC examined K. B. and observed him for four hours, but they

did not perform any diagnostic studies, such as a computerized tomography (CT) scan, X-ray, or ultrasound before K. B. left the hospital.

Out of an abundance of caution as a mandated reporter, an HDMC nurse reported the incident to San Bernardino County's Child and Family Services (CFS) hotline. The emergency response referral listed Ms. Rieman's home address and phone number. The following morning, Johnson, a supervising social worker, picked up the emergency response referral. Johnson assigned the case to Vazquez. Shortly after receiving her case assignment, Vazquez went to Ms. Rieman's home to conduct her investigation of the referral. When Vazquez advised Ms. Rieman that the family should take the baby to Loma Linda University Medical Center (LLUMC) for further evaluation, the family asked for an opportunity to speak with Vazquez's supervisor, Johnson, which was granted.

Ms. Rieman, her mother, and her stepfather then drove to the Yucca Valley CFS office to meet with Johnson. On the way, the family made an appointment for K. B. to be seen by Dr. Kasko, an obstetrician-gynecologist, for a follow-up examination. Once they arrived at the CFS office, Johnson expressed concern over the possibility of undetected internal injuries and urged the family to consider taking K. B. to LLUMC to be evaluated by another doctor. Ms. Rieman informed Johnson that an HMDC doctor had expressed concern over the level of radiation to which K. B. would be exposed if a CT scan were performed. At no point during this meeting or in any other conversations with CFS did its representatives inform Ms. Rieman that CFS would seek a warrant if she did not take K. B. to LLUMC.

Shortly after the family left the CFS office, Vazquez and Johnson began drafting an application for a detention warrant. Upon reviewing the application and finding probable cause, the Juvenile Court issued a temporary detention warrant pursuant to § 306(a)(1) of the California Welfare and Institutions Code. The warrant authorized law enforcement to enter Ms. Rieman's home in Yucca Valley, to locate K. B., to temporarily detain K. B. for placement with a licensed approved foster home or relative, and to seek a forensic interview and forensic medical examinations while excluding Ms. Rieman from those examinations. Under California law, the temporary detainment could only last for forty-eight hours, "excluding nonjudicial days," after which K. B. would be returned to Ms. Rieman's custody unless CFS filed a petition "within said period of time . . . to declare [the child] a dependent child . . . ." Cal. Welf. & Inst. Code § 313(a).

Law enforcement and Vazquez attempted to serve the temporary detention warrant at Ms. Rieman's home address twice that evening, but no one answered the door. The next morning, on September 8, 2018, another law enforcement officer attempted to serve the warrant at Ms. Rieman's home, but again, there was no response. Vazquez and the officer made a fourth and final attempt later that afternoon to no avail. The parties dispute exactly why these service attempts were unsuccessful. Some facts in the record suggest that Ms. Rieman and her family were deliberately evading service of the warrant. The Riemans, however, contend they were unaware of the warrant and were merely avoiding contact with Vazquez, whom they viewed as hostile.

In the days following the unsuccessful service attempts of the warrant, Vazquez began preparing a juvenile

dependency petition and detention report pursuant to § 300 of the California Welfare and Institutions Code. In preparing these documents, Vazquez scheduled the accompanying detention hearing for September 12, 2018, at 8:00 AM. In the detention report, which both Vazquez and Johnson ultimately signed, they claimed that Ms. Rieman was "not noticed" for the detention hearing because her "whereabouts [were] unknown." They also listed a different telephone number than the one that was listed for Ms. Rieman in the original emergency response referral compiled by CFS. Vazquez ultimately filed the petition and report on September 11, 2018.

Meanwhile, it is undisputed that Ms. Rieman's family attempted to contact CFS on several occasions. Despite their acknowledged attempts to get in touch with CFS, Vazquez and Johnson never called or otherwise attempted to notify Ms. Rieman that a detention hearing concerning her child was scheduled to take place on the morning of September 12, 2018. Therefore, when the Juvenile Court held the detention hearing on the morning of September 12, 2018, Ms. Rieman did not appear.

At the hearing, the court ordered K. B. to be detained and removed from his mother's care and custody and placed in the custody of CFS. The court also ordered supervised visitation between the child and the mother once a week for two hours and that an evidentiary forensic medical examination be performed. Lastly, the court issued a warrant of apprehension and set the matter for another conference to take place nearly a month later, on October 10, 2018.

Two days after the hearing, Ms. Rieman learned of its occurrence and that there was an active warrant of

apprehension for K. B.  Shortly after learning these facts, Ms. Rieman and the family provided CFS with additional medical records regarding K. B. from the prior week.  However, representatives of CFS informed Ms. Rieman that the issue was out of their hands, as CFS could no longer withdraw the warrant.  Three days later, Ms. Rieman took K. B. to LLUMC.  At the hospital, Ms. Rieman was forced to relinquish custody of K. B. to a law enforcement officer who arrived at the hospital pursuant to the warrant of apprehension.  K. B. was not returned to Ms. Rieman's custody until November 20, 2018, almost two months later.  Two months after that, the court dismissed the dependency proceedings upon CFS's request.  Because the proceedings were dismissed, the California Court of Appeal held that Ms. Rieman's appeals of the Juvenile Court's orders were moot.

## PROCEDURAL HISTORY

On February 24, 2020, the Riemans filed suit in federal district court pursuant to 42 U.S.C. § 1983.  In their first amended complaint, the Riemans alleged that Vazquez and Johnson, among others, violated the Riemans' Fourth and Fourteenth Amendment rights (1) by failing to provide them with notice of the detention hearing and (2) by providing false information to the Juvenile Court about why Ms. Rieman was not noticed for the hearing.  On July 12, 2022, the parties filed dueling summary judgment motions.  In their motion, Vazquez and Johnson argued to the district court that they are entitled to absolute immunity for their quasi-prosecutorial decisions in instituting the juvenile dependency proceedings and entitled to qualified immunity because they did not violate any clearly established constitutional rights.

On November 1, 2022, the district court held that Vazquez and Johnson were not entitled to absolute or qualified immunity. The court also granted the Riemans' motion for summary judgment "as to [their] first and second claims for violation of [their] Fourth and Fourteenth Amendment rights" on the grounds that Vazquez and Johnson failed to provide the Riemans with notice of the detention hearing and engaged in judicial deception. Vazquez and Johnson timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 to review Vazquez and Johnson's interlocutory appeal of the district court's summary judgment order denying them absolute and qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 525–26, 530 (1985). We review de novo denials of absolute and qualified immunity. *Botello v. Gammick,* 413 F.3d 971, 975 (9th Cir. 2005) (absolute immunity), *cert. denied*, 546 U.S. 1208 (2006); *Robinson v. Prunty*, 249 F.3d 862, 865–66 (9th Cir. 2001) (qualified immunity). Where disputed facts are relevant to the denial of qualified immunity, however, we determine whether the denial was appropriate by assuming that the version of material facts as asserted by the nonmoving party is correct. *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001).

## ANALYSIS

## I. Vazquez and Johnson Are Not Entitled to Absolute Immunity.

Vazquez and Johnson contend they are entitled to absolute immunity because they are being sued for actions taken in their quasi-prosecutorial role as social workers. They argue that "the fundamental question" in evaluating

their claim to absolute immunity is "whether conduct relate[s] to the initiation of a [juvenile] dependency proceeding," and that the conduct they are being sued for "unquestionably is." They also emphasize that the discretionary nature of how they were supposed to give notice of the detention hearing also weighs in favor of their being entitled to absolute immunity.

Defendants in § 1983 suits are generally entitled to only immunities that existed at common law. *See Imbler v. Pachtman*, 542 U.S. 409, 417–18 (1976). Courts have thus "granted state actors absolute immunity only for those functions that were critical to the judicial process itself," such as "'initiating a prosecution.'" *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc) (quoting *Imbler*, 424 U.S. at 431).[1] It therefore follows that social workers may enjoy absolute immunity from suit when they make "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." *Id.* at 898.

However, social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (per curiam). Put simply, "as prosecutors and others investigating criminal matters have no absolute immunity for their investigatory conduct,"

---

[1] We have amended this opinion to remove the following phrase from our citation to *Miller*: "*overruled on other grounds*, *Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021)." The Supreme Court's decision in *Sanchez* did not overrule any aspect of our decision in *Miller*.

it follows that "social workers conducting investigations have no such immunity" as well. *Id.* at 908–09.

In this case, had the Riemans sued Vazquez and Johnson for their discretionary decision to institute juvenile dependency proceedings to take custody of K. B. away from Ms. Rieman, they likely would have been entitled to absolute immunity since that decision is inherently prosecutorial. *See Miller*, 335 F.3d at 898. However, the Riemans' suit did not challenge that quasi-prosecutorial decision. Rather, the Riemans sued Vazquez and Johnson for their failure to provide Ms. Rieman with notice of the detention hearing, despite knowing how to contact her and her parents, and their acts of judicial deception regarding Ms. Rieman's whereabouts.

The crux of Vazquez and Johnson's argument is that since they are being sued for conduct that "relate[s] to the initiation of a dependency proceeding," they are absolutely immune from suit. However, that argument relies upon an overly broad conception of absolute immunity's scope. As we noted in *Beltran*, a social worker is "not entitled to absolute immunity from claims that they . . . made false statements in a dependency petition affidavit . . . because such actions aren't similar to discretionary decisions about whether to prosecute." 514 F.3d at 908. Surely, the making of such statements in a dependency petition affidavit "relate[s]" in some broad sense "to the initiation of a dependency proceeding," as Vazquez and Johnson contend, but such a loose relation is not enough to render those actions absolutely immune from suit. The actions themselves must be "similar to discretionary decisions about whether to prosecute." *Beltran*, 514 F.3d at 908. Here, neither the actions nor omissions for which Vazquez and Johnson are being sued—i.e., providing false information to the Juvenile

Court and failing to give notice of the hearing—are "similar to discretionary decisions about whether to prosecute." *Id.* Accordingly, Vazquez and Johnson do not enjoy absolute immunity from suit.

Moreover, Vazquez and Johnson's related argument that "the method of notice" is "discretionary," does not save their defenses of absolute immunity. The fact that social workers have some discretion in how they give notice of a detention hearing to a parent does not render decisions regarding the method of notice "similar to discretionary decisions about whether to prosecute." *Beltran*, 514 F.3d at 908. And even so, the Riemans have not sued Vazquez and Johnson for their method of notice; the Riemans have sued them for failing to provide any notice at all. The parties agree that giving notice of a detention hearing is mandatory under the law. It follows that giving notice is non-discretionary and very much unlike the discretionary decision to initiate a prosecution. *See Beltran*, 514 F.3d at 908; *cf. Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (denying absolute immunity to a court reporter who was "required by statute to 'recor[d] verbatim' court proceedings in their entirety"). Accordingly, absolute immunity does not apply to the Riemans' claim that Vazquez and Johnson failed to give them notice of the detention hearing as such notice was mandatory. We therefore affirm the district court's order denying Vazquez and Johnson absolute immunity.

## II. Vazquez and Johnson Are Not Entitled to Qualified Immunity.

Vazquez and Johnson also contend that they are entitled to qualified immunity for their conduct relating to the juvenile dependency proceedings. First, they argue that their representations to the Juvenile Court about Ms. Rieman's

whereabouts do not amount to judicial deception, and even if they did, the constitutional violation was not clearly established when they made the statements, and thus qualified immunity applies.

Second, Vazquez and Johnson argue on appeal that they did their best to give Ms. Rieman notice of the detention hearing through their attempts to serve the temporary detention warrant, and therefore they did not violate her due process rights when they failed to contact her about the detention hearing.  They suggest that because no court has decided these exact set of circumstances regarding notice, the law is not clearly established, and thus qualified immunity applies to their failure to give actual notice of the detention hearing.

Qualified immunity shields government actors from civil liability pursuant to § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1151 (9th Cir. 2021).  "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014).  A clearly established constitutional right "must be particularized to the facts of the case." *Davis v. United States*, 854 F.3d 594, 599 (2017) (cleaned up).  "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

### A. Vazquez and Johnson Are Not Entitled to Qualified Immunity from Suit for Failing to Provide Notice of the Detention Hearing.

Vazquez and Johnson do not dispute the district court's conclusion that Ms. Rieman had a constitutionally protected due process right to receive notice of (and an opportunity to be heard at) the detention hearing where CFS sought custody of her child. Rather, they suggest that they did not ultimately violate her rights because they "attempted personal service of the detention warrant four times over the course of two days," and Ms. Rieman evaded those service attempts, thereby excusing the formal notice requirement.

However, in the very same sentence in their opening brief, Vazquez and Johnson acknowledge that all their service attempts took place "before [they] decid[ed] to initiate a dependency proceeding." As the Riemans correctly point out in their answering brief, "[t]here is no date [for the detention hearing] on the [temporary] [d]etention [w]arrant[,] [n]or could there have been, since the [d]etention [h]earing was not scheduled until after the attempts were made to serve the [d]etention [w]arrant." Therefore, Vazquez and Johnson's argument that their unsuccessful attempts to serve the temporary detention warrant somehow excused or remedied their failure to call or otherwise notify Ms. Rieman of the detention hearing is unavailing. The district court was therefore correct to conclude that Vazquez and Johnson failed to give Ms. Rieman notice of the detention hearing, thereby violating her right to such notice.

A parent's "whereabouts" being "unknown" only excuses the notice requirement after "there has been a good faith attempt to provide notice to a parent" of the detention

hearing. *In re Justice P.*, 19 Cal. Rptr. 3d 801, 806 (Cal. App. 2004). It is undisputed that no such attempt was ever made. That the parties dispute whether the Riemans were aware of the temporary detention warrant and were therefore evading it by hiding out in a different county is immaterial. Vazquez and Johnson knew how to contact Ms. Rieman about the detention hearing, but they chose not to even try.

To the extent that Vazquez and Johnson imply that Ms. Rieman's right to notice was not "clearly established" at the time they violated it, that argument is foreclosed by the fact that long before September 2018, "it was clear that a parent . . . could not be summarily deprived of th[e care and] custody [of his children] without notice and a hearing, except when the children were in imminent danger."**[2]** *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997) (citing *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991)). Vazquez and Johnson's argument is further undermined by the fact that long before September 2018, it was clear under California law that after a social worker files a dependency petition, she must give notice to the child's parents "as soon as possible . . . ." Cal. Welf. & Inst. Code § 290.1(c). "Service of the notice shall be written or oral," *id.* § 290.1(e), and the notice must include "[t]he date, time, and place of the hearing," *id.* § 290.1(d)(1). And the means of giving notice to the parent "must be such as one desirous of actually informing the [parent] might reasonably adopt to accomplish

---

[2] Vazquez and Johnson never asked the Juvenile Court to excuse the notice requirement because K. B. was in imminent danger. Instead, they represented to the court that Ms. Rieman was "not noticed" for the hearing because her "whereabouts [were] unknown." Vazquez and Johnson only discussed "substantial danger to [K. B.'s] physical health" with respect to why they believed the court should ultimately order his removal from Ms. Rieman's custody and care.

it." *In re Antonio E.*, 144 Cal. Rptr. 466, 472 (Cal. Ct. App. 1978). Considering these clear statements of law, we conclude that "any reasonable official in [Vazquez or Johnson's] positions would have understood that he was violating" Ms. Rieman's due process rights by failing to provide her with notice of the detention hearing. *Kisela*, 138 S. Ct. at 1153. Accordingly, we affirm the district court's denial of qualified immunity with respect to Vazquez and Johnson's failure to provide Ms. Rieman with notice of the hearing.

## B. Vazquez and Johnson Are Not Entitled to Qualified Immunity for Their Misrepresentation to the Juvenile Court About Why Ms. Rieman Was Not Noticed for the Hearing.

An individual has a well-established constitutional right to be free from deception in the presentation of evidence during juvenile dependency proceedings. *Greene v. Camreta*, 588 F.3d 1011, 1034–35 (9th Cir. 2009), *vacated in part on other grounds*, 563 U.S. 692 (2011); *see also Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) ("A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment."); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010) ("[D]eliberately fabricating evidence in civil child abuse proceedings violates the Due Process clause of the Fourteenth Amendment when a liberty or property interest is at stake . . . ."). "[G]overnment perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in [the] courts." *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017). "There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent." *Id.*

To support a § 1983 claim that a social worker engaged in judicial deception, a plaintiff must show "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 799 (9th Cir. 2024). Misrepresentations or omissions are "'material' . . . if the Juvenile Court would have declined to issue the order had [the social worker] been truthful." *Greene*, 588 F.3d at 1035.

Here, it is undisputed that, despite having Ms. Rieman's correct telephone number, and despite the Riemans' repeated attempts to contact CFS, Vazquez and Johnson never attempted to call Ms. Rieman or otherwise inform her or her family about the time and place of the detention hearing. Had they told the Juvenile Court that they did not provide notice to Ms. Rieman because they had never attempted to do so, the Juvenile Court could not (and would not) have proceeded with the hearing and ordered that K. B. be removed from Ms. Rieman's care and custody.[3] Therefore, Vazquez and Johnson's representation to the Juvenile Court that Ms. Rieman was "not noticed" because her "whereabouts [were] unknown" was materially false.[4]

Vazquez and Johnson's related argument that qualified immunity should still apply because "it is not 'clearly established' that it would be a due process violation to claim a parent's whereabouts were unknown based on the facts as

---

[3] Counsel for Vazquez and Johnson conceded this point at oral argument.

[4] In the parties' joint statement of undisputed facts, Vazquez and Johnson conceded this interpretation of the detention report, i.e., they "informed the [c]ourt in the [d]etention [r]eport that [Ms. Rieman] was 'not noticed' for the [d]etention [h]earing because her 'whereabouts [were] unknown.'"

known to [them],"" is foreclosed by our decision in *Hardwick*, 844 F.3d 1112. In that case, we observed that "general statements of the law are not inherently incapable of giving fair and clear warning, and in some instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id.* at 1117 (cleaned up). The "salient question . . . is whether the state of the law" at the time of their misconduct gave the social workers "fair warning that their [misconduct] was unconstitutional." *Id.* (cleaned up).

Here, a reasonable social worker in Vazquez and Johnson's shoes would have understood, based on prior decisional law, that providing incomplete and false information to the Juvenile Court to convince the court the social worker had satisfied the due process notice requirement constitutes judicial deception. Long before September 2018, it was clear that "[t]here are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent." *Id.* at 1119; *see also Scanlon*, 92 F.4th at 805 (observing that "[t]he right to be free from judicial deception" in child custody matters "was clearly established prior to 2016"). That the Riemans have failed to identify a case that specifically evaluates "the very action in question" does not change the analysis. *Hardwick*, 844 F.3d at 1117. It is obvious that the prohibition against bearing false witness applies to representations that a social worker makes about a parent's whereabouts, especially when those representations will determine whether a juvenile court will proceed with a hearing to remove a child from that parent's custody without hearing from the parent first.

The fact that the right to be free from judicial deception arises in part under the Fourth Amendment also does not save Vazquez and Johnson's qualified immunity defense. While it is true that specificity in past decisional law is especially important in the Fourth Amendment context where law enforcement officers often have to make quick decisions with significant consequences, that principle more appropriately applies in excessive force cases arising under the Fourth Amendment. *See id.* at 1119. In this case, Vazquez and Johnson's acts of judicial deception "were not made under pressing circumstances requiring prompt action, or those providing ambiguous or conflicting guidance," such as when a law enforcement officer is faced with a sudden threat of deadly force in a public setting. *Id.* Rather, Vazquez and Johnson were able to draft the juvenile dependency petition and detention report over the course of several days and had ample time to attempt to contact Ms. Rieman about the time and place of the detention hearing, which was mandatory under the law. Accordingly, we affirm the district court's order denying Vazquez and Johnson qualified immunity from suit for their representations to the Juvenile Court about Ms. Rieman's whereabouts.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying absolute and qualified immunity to Vazquez and Johnson.