**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MULTISTAR INDUSTRIES, INC., DBA Multifrost, Inc.,<br>*Petitioner*,<br><br>v.<br><br>U.S. DEPARTMENT OF TRANSPORTATION; FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,<br>*Respondents*. | No. 12-73138<br><br>TRAN No. 461410 |

| | |
|---|---|
| MULTISTAR INDUSTRIES, INC., DBA Multifrost, Inc.,<br>*Petitioner*,<br><br>v.<br><br>U.S. DEPARTMENT OF TRANSPORTATION; FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,<br>*Respondents*. | No. 12-73485<br><br><br>OPINION |

On Petition for Review of an Order of the
Department of Transportation,
National Transportation Safety Board

Argued and Submitted
December 5, 2012—Pasadena, California

Filed February 7, 2013

Before: Marsha S. Berzon and Sandra S. Ikuta, Circuit
Judges, and Jennifer G. Zipps, District Judge.[*]

Opinion by Judge Berzon

## SUMMARY[**]

### Transportation

The panel dismissed in part, and denied in part, consolidated petitions for review challenging a compliance review of a for-hire motor carrier conducted by the U.S. Department of Transportation Federal Motor Carrier Safety Administration.

As to petitioner's substantive challenge, the panel held that it could not reach the merits of petitioner's substantive claims because there was no final decision by the agency as to certain violations, and dismissed the petition for review as to the merits of those violations. As to petitioner's procedural due process challenge, the panel denied the petition for

_____

[*] The Honorable Jennifer G. Zipps, District Judge for the U.S. District Court for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

review because petitioner received all of the process it was due with regard to the contested violations, and the agency's denial of petitioner's petition for review was not arbitrary or capricious.

## COUNSEL

Timothy W. Wiseman (argued) and Christopher C. McNatt, Jr., Scopelitis, Garvin, Light, Hanson & Feary, P.C., Indianapolis, Indiana, for Petitioner.

Jonathan H. Levy (argued) and Matthew Collette, United States Department of Justice, Civil Division; Stuart F. Delery, Principal Deputy Assistant Attorney General; Robert S. Rivkin, General Counsel; Paul M. Geier, Assistant General Counsel for Litigation; Timothy H. Goodman, United States Department of Transportation; T.F. Scott Darling, III, Chief Counsel; Fred K. Ford, Assistant Chief Counsel; Jedd Miloud, Federal Motor Carrier Safety Administration, Washington, D.C., for Respondents.

## OPINION

BERZON, Circuit Judge:

Petitioner Multistar Industries, Inc. ("Multistar") is a for-hire motor carrier engaged in the business of transporting hazardous materials. As a result of a recent compliance review of Multistar's operations, conducted by the U.S. Department of Transportation Federal Motor Carrier Safety Administration ("FMCSA" or "the agency"), Multistar was assigned an "unsatisfactory" safety rating and, as a

consequence, ordered to cease operations. The agency denied Multistar's subsequent administrative appeal, which challenged certain violations discovered during the compliance review.

Multistar now petitions for review of FMCSA's order, and, in a separate petition for review, challenges the agency's denial of Multistar's petition for administrative review. We dismiss in part and deny in part the consolidated petitions.

## I.  Statutory and Regulatory Background

Congress has directed the Secretary of Transportation to "determine whether an owner or operator is fit to operate safely commercial motor vehicles, utilizing among other things . . . [the] safety inspection record of such owner or operator." 49 U.S.C. § 31144(a)(1). To do so, the Secretary is directed to "maintain by regulation a procedure for determining the safety fitness of an owner or operator." *Id.* § 31144(b); *see also id.* § 31136. With regard to the transportation of hazardous materials, Congress has declared that "an owner or operator who the Secretary determines is not fit may not operate in interstate commerce beginning on the 46th day after the date of such fitness determination and until the Secretary determines that such owner or operator is fit." *Id.* § 31144(c)(3).

The Secretary's authority to regulate the procedures of such fitness determinations has been delegated to the FMCSA. *See* 49 U.S.C. § 113(f); 49 C.F.R. § 1.87(f). FMCSA has established a fitness determination procedure as directed by Congress. *See* 49 C.F.R. Pt. 385. Under this regulatory framework, a motor carrier is either "unrated" or is assigned one of three possible safety ratings: "satisfactory,"

"conditional," or "unsatisfactory." *See id.* § 385.3. A motor carrier receives a "satisfactory" safety rating if it has in place "adequate safety management controls" to meet the safety fitness standard prescribed in § 385.5.[1] *Id.* A motor carrier is assigned a "conditional" safety rating if it "does not have adequate safety management controls in place to ensure compliance with the safety fitness standard that could result in" violation of safety regulations. *Id.* § 385.3.

An "unsatisfactory" safety rating means that the carrier "does not have adequate safety management controls in place to ensure compliance with the safety fitness standard," and that, as a result, violation of the safety regulations has occurred. *Id.* Pursuant to FMCSA's safety ratings procedures, a hazardous materials carrier that receives an "unsatisfactory" safety rating is prohibited from operating a commercial motor vehicle in interstate or intrastate commerce. *Id.* § 385.13(a)(1); *see also* 49 U.S.C. § 31144(c)(3). FMCSA may also revoke the operating registration of a motor carrier rated "unsatisfactory." 49 C.F.R. § 385.13(e).

The factors considered in determining a carrier's safety rating include information collected during "on-site examination[s] of motor carrier operations," termed "compliance reviews." *Id.* §§ 385.3, 385.7. During a compliance review, FMCSA evaluates the motor carrier's compliance with the Federal Motor Carrier Safety Regulations[2] ("FMCSRs") and Hazardous Materials

---

[1] All citations are to Title 49 of the Code of Federal Regulations unless otherwise noted.

[2] *See* 49 C.F.R. parts 350–399.

Regulations[3] ("HMRs").  *See id.* Pt. 385, App. B § (d).  Based on the information collected from the compliance review, FMCSA assigns the carrier a proposed safety rating based on any regulatory violations found.  *Id.* § 385.9(a).

The methodology for determining the proposed safety rating is contained in Appendix B to Part 385.  Section VII of Appendix B categorizes certain regulations (i.e., certain FMCSRs and HMRs) as "acute" or "critical."  The ratings methodology provides that each violation of an acute regulation is considered one "point."   Each pattern of violations of a critical regulation (meaning more than one violation of the same critical regulation) is considered one or two points, depending on which critical regulation is violated. *Id.* Pt. 385, App. B, § II(g), VII.  All regulatory violations (acute, critical, or otherwise) are grouped into six Factors, which are associated with particular parts of the FMCSRs or HMRs:

- Factor 1 - General (Parts 387 and 390)

- Factor 2 - Driver (Parts 382, 383, and 391)

- Factor 3 - Operational (Parts 392 and 395)

- Factor 4 - Vehicle (Parts 393 and 396)

- Factor 5 - Hazardous Materials (Parts 397, 171, 177 and 180)

- Factor 6 - Accident Factor

---

[3] *See* 49 C.F.R. parts 171–180.

*Id.* § II(C). Based on data gathered during the compliance review, each Factor is assigned a rating of "satisfactory" if no points have been assigned, "conditional" if one point has been assigned, and "unsatisfactory" if two or more points have been assigned. *Id.* § III(A). Finally, the ratings for the six Factors are combined into a single "overall" rating for the carrier according to a "Rating Table." *Id.* If two or more Factors are rated "unsatisfactory," the carrier's proposed overall rating is "unsatisfactory." *Id.* § III(B).

A proposed overall "unsatisfactory" safety rating is provisional and does not become final until 45 days after the carrier receives written notice of the proposed rating. *Id.* § 385.11(c)(1). Pursuant to 49 C.F.R. § 385.15, a carrier may seek administrative review of a proposed or final safety rating within 90 days of its issuance. *Id.* § 385.15(a), (c)(2). Carriers assigned an "unsatisfactory" rating, however, are encouraged to file such requests within 15 days to allow the agency to issue a "final decision" before the prohibition on operating accompanying such a rating takes effect. *Id.* § 385.15(c)(1).

In addition to, or instead of, seeking administrative review under § 385.15, a carrier may request an upgrade of its safety rating under § 385.17 based on steps the carrier has taken to correct violations found during the compliance review. Such "upgrade requests" are separate from petitions for administrative review under § 385.15, and may be filed at any time, including after the proposed safety rating becomes final and operating authority is revoked. *See id.* § 385.17(a). Upon receipt of an upgrade request, the agency must determine whether "the motor carrier has taken the corrective actions required and [whether] its operations currently meet the safety standard and factors specified in [49 C.F.R.]

§§ 385.5 and 385.7." *Id.* § 385.17(h), (i). If the agency denies the upgrade request, the carrier may seek administrative review of that denial under § 385.15(c)(2).

## II. Factual and Procedural Background

## A. Multistar's Compliance Review and Safety Rating

On August 13, 2012, FMCSA conducted a compliance review of Multistar's operations. That review found 26 total sets of violations of various regulations, resulting in unsatisfactory Factor 2 and Factor 5 ratings and, therefore, an overall "unsatisfactory" rating. Multistar's Factor 2 rating was based on discovered violations of two acute regulations.[4] Its unsatisfactory Factor 5 rating was based on violations of two acute and five critical regulations.[5] Pursuant to the

---

[4] Specifically, FMCSA discovered violations of 49 C.F.R. § 383.37(a) (knowingly allowing, requiring, permitting, or authorizing an employee with a suspended, revoked, or canceled commercial driver's license to operate a commercial motor vehicle), identified in the compliance report as Violation 17, and of 49 C.F.R. § 391.11(b)(4) (using a physically unqualified driver), identified in the compliance report as Violation 20.

[5] The agency found violations of 49 C.F.R. § 172.800(b) (offering or transporting hazardous materials without a security plan), identified as Violation 3 in the compliance report; 49 C.F.R. § 177.800(c) (failing to train hazardous materials employee), identified as Violation 4 in the compliance report; 49 C.F.R. § 177.801 (transporting or accepting a shipment of hazardous materials not in proper condition for transportation or not certified as to proper packaging, marking, and description), identified as Violation 5 in the compliance report; 49 C.F.R. § 177.817(a) (transporting a shipment of hazardous materials not accompanied by a properly prepared shipping paper), identified as Violation 7 in the compliance report; 49 C.F.R. § 180.407(a) (transporting a hazardous material in a DOT specification cargo tank for which a test or inspection specified in this section has become due), identified as Violation 9 in the

agency's ratings methodology, Multistar was assigned two points for Factor 2 and seven points for Factor 5, which in turn resulted in a proposed overall safety rating of "unsatisfactory." *See* 49 C.F.R. Pt. 385, App. B, § III.

Four days later, on August 17, FMCSA sent Multistar an official notice stating that the proposed "unsatisfactory" rating would become final and Multistar would be prohibited from operating commercial motor vehicles in 45 days—that is, on October 2, 2012—unless it took the steps necessary to improve its rating before that date. The notice also provided information regarding how to request a safety rating upgrade under § 385.17 and how to file an administrative appeal under § 385.15. With respect to the latter, the notice pointed out that although Multistar had 90 days in which to file an appeal, it was encouraged to do so within 15 days if it wanted the agency to rule before the "unsatisfactory" rating became final.

## B.  Administrative Proceedings

### 1.   Multistar's Administrative Appeal under § 385.15

On August 31, 2012—fourteen days after FMCSA sent the official notice—Multistar filed a petition for administrative review of the proposed "unsatisfactory" safety rating under § 385.15 ("petition for administrative review"). That petition challenged five of the regulatory violations

---

compliance report; 49 C.F.R. § 180.407(c) (failing to periodically test and inspect a cargo tank), identified as Violation 11 in the compliance report; and 49 C.F.R. § 180.417(a)(1) (failing to retain a cargo tank manufacturer's data report, certificate, and related documentation), identified as Violation 15 in the compliance report.

FMCSA discovered during the August 13 compliance review—specifically, violations numbers 5, 8, 11, 14, and 17. Pursuant to § 385.15, FMCSA was obligated to issue a written response to the petition within 30 days. 49 C.F.R. § 385.15(e)(1).

On September 25, 2012, FMCSA issued a letter to Multistar ordering it to cease all transportation operations by October 2, 2012, as required under 49 U.S.C. §§ 13905(f)(1)(B) and 31144(c)(3), and 49 C.F.R. § 385.13(a)(1) and (d)(1) (the "order"). The order also revoked Multistar's motor carrier registration as of October 2. *See* 49 C.F.R. § 385.13(e).

The following week, on October 1, FMCSA issued its decision denying Multistar's petition for administrative review. In doing so, FMCSA noted that violations 8 and 14 were neither acute nor critical, and therefore were irrelevant to Multistar's overall safety rating under the ratings methodology.[6] As to violation 17, the agency observed that Multistar denied merely "that it knowingly committed the violation," with no further explanation or argument; FMCSA explained that "[g]eneral denials are insufficient to demonstrate that the Agency erred in assigning [Multistar]'s safety rating." Finally, with respect to violations 5 and 11, the agency noted that those violations comprised only two of the seven total violations of acute or critical regulations falling within Factor 5, and, therefore, "removal of th[o]se violations would not change [Multistar's] overall Unsatisfactory safety rating." The agency thereby affirmed

---

[6] Violation 8 related to Multistar's failure to have proper emergency discharge controls on its cargo tanks; Violation 14 arose from shortcomings in Multistar's inspection of delivery hose assemblies.

Multistar's overall "unsatisfactory" rating and the order to cease operations.

### 2. Multistar's Upgrade Requests under § 385.17

At the same time Multistar was pursuing its appeal with the agency, on September 7, 2012 it also requested a safety rating upgrade pursuant to § 385.17. FMSCA denied that request in a letter dated October 5, 2012, holding that Multistar had not taken steps adequate to correct the violations found during the August 13 compliance review. Multistar accepted FMCSA's invitation to submit another upgrade request, which it did on October 25. FMCSA denied that second request on November 21, 2012. Multistar has ninety days from that date to seek an administrative appeal of the second upgrade request denial.[7] *See* 49 C.F.R. §§ 385.15(c)(2), 385.17(j).

### C. Judicial Proceedings

On October 1, 2012, the same day FMCSA denied Multistar's petition for administrative review and one day before the order to cease operations was to take effect, Multistar filed a petition for judicial review of the order and an emergency motion to stay the requirement that it cease operations. We granted Multistar's emergency motion and stayed the order pending resolution of Multistar's petition for review. On October 25, 2012, Multistar filed a second petition for judicial review challenging the agency's denial of its petition for administrative review. We consolidated the two petitions for review.

---

[7] So far, Multistar has not sought administrative review of the agency's denials of the upgrade requests.

## III.  Analysis

We have jurisdiction to review specified final orders of the Secretary of Transportation under the Hobbs Act, 28 U.S.C. § 2342(3)(A).  "Generally, administrative orders are final and appealable if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process."  *Sierra Club v. U.S. Nuclear Regulatory Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988).  We review orders of the FMCSA under the Administrative Procedure Act ("APA") and "may set aside an agency action only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011) (quoting 5 U.S.C. § 706(2)(A)); *see Darrell Andrews Trucking, Inc. v. FMCSA*, 296 F.3d 1120, 1124 (D.C. Cir. 2002).

Multistar asserts two principal challenges on appeal, one substantive and the other procedural.  First, it argues that the agency abused its discretion in issuing the order to cease operations, because the "unsatisfactory" safety rating on which it was based was itself premised on the misapplication of certain safety regulations.  Second, Multistar contends that the agency acted arbitrarily or capriciously and violated its due process rights by denying Multistar's petition for administrative review without providing a substantive response to some of the carrier's challenges.  We address each challenge in turn.

## A.  Multistar's Challenge to FMCSA's "Unsatisfactory" Rating and Order to Cease Operations

According to Multistar, the order to cease operations and the "unsatisfactory" rating should be set aside as an abuse of

discretion premised on a misapplication of certain safety regulations. Specifically, Multistar challenges violations 5 and 11 listed in the compliance review,[8] arguing that they were based on the agency's erroneous findings that some of Multistar's container tanks violated specified safety regulations, but, according to Multistar, the regulations relied upon did not apply to those types of tanks.

Under the Hobbs Act and the APA, we are limited to reviewing only the "final" action taken by the agency. 28 U.S.C. § 2342(3)(A); 5 U.S.C. § 704. Here, FMCSA's denial of Multistar's petition for administrative review of the "unsatisfactory" rating is a final agency action, permitting judicial review of FMCSA's unsatisfactory safety rating. 49 C.F.R. § 385.15(f). Multistar's "unsatisfactory" safety rating became final agency action once the agency denied Multistar's petition for administrative review of that rating. *See id.* § 385.423(a) ("After a motor carrier has had an opportunity for administrative review of, or change to, a proposed safety rating, FMCSA's issuance of a final safety rating constitutes final agency action . . . ."); *see also Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 829 (9th Cir. 2002), *abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (noting that once an optional administrative appeal or rehearing concludes, the original decision is final for purposes of judicial review). FMCSA's denial of Multistar's petition for administrative

[8] Unlike in its administrative appeal, Multistar does not contest violation 17. In its opening brief, Multistar also challenged violations 8 and 14. As noted, FMCSA did not consider these two violations when calculating Multistar's safety rating in the first place, as those violations were neither acute nor critical. Moreover, Multistar did not make any attempt to explain why the agency's findings as to violations 8 and 14 were erroneous.

review upheld the "unsatisfactory" rating, and therefore represented the "consummation of the agency's decisionmaking process" on the rating matter. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010).

Absent our stay, the order to cease operations would have taken effect the day after the unsatisfactory rating became final. 49 C.F.R. § 385.13(a)(1). Because the validity of that order depends entirely on the unsatisfactory rating, *see id.* §§ 385.13(a)(1), 385.15(c), which the denial of administrative review effectively upheld, we concentrate our analysis on the final rating.

Significantly, Multistar's final safety rating did not rely on or otherwise incorporate violations 5 and 11. Indeed, although these contested violations made up two of the seven Factor 5 violations that, combined with Multistar's Factor 2 violations, first resulted in the agency's *proposed* "unsatisfactory" safety rating, the agency expressly disclaimed any reliance on them in denying Multistar's petition for administrative review. As the agency explained, the August 13 compliance review revealed a total of seven violations of acute or critical regulations falling within Factor 5. Because a finding of just *two* violations of acute or critical regulations yields an "unsatisfactory" factor rating, *see* 49 C.F.R. Pt. 385 App. B, § III, removing violations 5 and 11 would not affect Multistar's Factor 5 rating; there would still remain five uncontested violations of acute or critical regulations mandating an "unsatisfactory" Factor 5 rating. That rating, combined with Multistar's uncontested "unsatisfactory" Factor 2 rating, still added up to an overall "unsatisfactory" safety rating.

Thus, violations 5 and 11 did not factor into Multistar's final "unsatisfactory" safety rating, and so did not underlie the order to cease operations. In other words, there was no final agency action that found violations 5 and 11 or depended on such findings. Multistar cannot substantively challenge in this judicial, APA proceeding the propriety of those nonfinal determinations. Multistar does not contend that the "unsatisfactory" rating is invalid on the grounds on which it was upheld. We therefore must dismiss the petitions insofar as they challenge the "unsatisfactory" rating and the order to cease operations.

Multistar's assertion that its substantive challenges to violations 5 and 11 "work in tandem" with its upgrade requests does not change this conclusion. According to Multistar, *if* the agency were to grant the upgrade request, *then* the removal of violations 5 and 11 from the compliance review could become relevant to its overall safety rating. As noted, however, Multistar has yet to seek administrative review of either of the agency's denials of its upgrade requests. Unless and until Multistar does so, the currently operative "unsatisfactory" safety rating and order to cease operations stand firmly on the uncontested violations, and not on violations 5 and 11. Without a final decision by the agency as to *those* violations, we may not reach the merits of Multistar's substantive claims, and so dismiss the petition for review as to the merits of violations 5 and 11.

## B. Multistar's Due Process Challenge to the Denial of its Petition for Administrative Review

Multistar also challenges FMCSA's denial of its request for administrative review, on the grounds that the agency's refusal to address the merits of Multistar's challenges to

violations 5 and 11 was arbitrary and capricious and violated the carrier's due process rights.

As noted, FMCSA denied the request for review because removing violations 5 and 11 would not alter Multistar's overall safety rating.  That response, Multistar asserts, deprived Multistar of a substantive answer to its claims and foreclosed its only means to contest those violations.[9]

**1**

As an initial matter, we note that, notwithstanding our dismissal of Multistar's substantive claims, Multistar has standing to raise this procedural challenge.  To satisfy Article III standing, a plaintiff must show (1) it "ha[s] suffered an 'injury in fact'" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury" and the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted).

Our analysis of the first, injury in fact, aspect of standing is "not fundamentally changed by the fact that a petitioner asserts a procedural, rather than a substantive injury." *Nuclear Info. & Res. Serv. v. NRC*, 457 F.3d 941, 949 (9th Cir. 2006) (internal quotation marks omitted).  Where, as here, a plaintiff alleges injury based on the government's failure to abide by a procedural requirement, it must show

---

[9] Notably, since filing this appeal Multistar has received a proposed substantive decision, subject to administrative review, as to its challenges to violations 5 and 11.

that the procedures "protect[] a concrete threatened interest." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008) (internal quotation marks omitted); *Lujan*, 504 U.S. at 573 & n.8. Once a plaintiff establishes such an interest, however, its burden to establish the other two standing elements—causation and redressability—is lessened. *Salmon Spawning & Recovery Alliance*, 545 F.3d at 1224. Notably, for standing purposes, a plaintiff alleging a procedural due process violation need not demonstrate that it would prevail had it been accorded adequate process. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that "[t]he right to procedural due process . . . does not depend upon the merits of a claimant's substantive assertions").

According to Multistar, the order to cease operations is invalid because the procedures for administrative review set forth in § 385.15 obligated FMCSA to provide a substantive response to Multistar's challenges to violations 5 and 11. Without a substantive ruling on the contested violations, Multistar argues, it may be forced to expend resources on remedying those violations should it seek a ratings upgrade in the future, even though it could turn out that the violations were not accurately assessed against it in the first place. In that sense, the allegedly inadequate procedural protections afforded Multistar by FMCSA threaten Multistar's economic interests. *See Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc) (holding that a plaintiff may establish injury in fact when asserting procedural injury by "show[ing] that the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff"). As a remedy, Multistar seeks a remand to the agency for a substantive decision as to the contested violations.

We hold that the asserted injury is sufficient for standing purposes and that, as the claim asserted is procedural, the possibility that the claim could result in a final, judicially reviewable decision as to the validity of the two challenged violations meets the causation and redressability factors applicable to such procedural claims. In so ruling, of course, we assume, rather than decide, that Multistar's procedural claim might result in some relief. *See Scott v. Rosenberg*, 702 F.2d 1263, 1268 (9th Cir. 1983).

**2**

Reaching the merits of Multistar's procedural claim accordingly, we conclude that FMCSA was not obligated in response to the request for review to provide a substantive response to Multistar's challenges concerning violations 5 and 11. Because those challenges, even if correct, could not have affected FMCSA's final action, the agency was not obligated to reach their merits. *Cf. Simpson v. Young*, 854 F.2d 1429, 1433–35 (D.C. Cir. 1988) (noting that agencies generally are not obligated "to address every argument advanced [by a petitioner]. . . no matter how minor or inconsequential the argument may be").

Multistar argues that 49 C.F.R. § 385.15 "contemplates a process by which a motor carrier can challenge *any* errors it believes the FMCSA committed in issuing its safety rating," thus "serv[ing] as a guarantee of due process, ensuring that erroneous decisions made by FMCSA field agents do not go unchecked." We disagree. Nothing in that regulation, nor, derivatively, in the APA, obligates FMCSA to address the merits of every contested agency finding when the agency did not rely on those findings in its final action. To the contrary, § 385.15 merely gives motor carriers the option to "request

FMCSA to conduct an administrative review if it believes FMCSA has committed an error *in assigning its proposed or final safety rating.*" 49 C.F.R. § 385.15(a) (emphasis added). As FMCSA has previously explained, "[t]he purpose of an administrative appeal under [§ 385.15] is to determine whether FMCSA committed error in assigning a safety rating . . . not [] to provide motor carriers with an opportunity to seek 'removal' of violations that do not affect the safety rating." *In the Matter of West Marine Prods., Inc.*, FMCSA-2009-0138, 2009 WL 1581078, at *2 (June 4, 2009).

Multistar relies on *Darrell Andrews*, 296 F.3d 1120, to argue that the agency in its review decision was obligated substantively to determine the challenges to violations 5 and 11 raised in Multistar's petition. In *Darrell Andrews*, a motor carrier petitioned for administrative review of FMCSA's decision assigning the carrier a "conditional" safety rating pursuant to the ratings methodology contained in Appendix B to § 385. 296 F.3d at 1122–23. That rating was based on the motor carrier's failure to maintain certain toll receipts for its drivers in violation of § 395.8(k)(1). *Id.* at 1123–24. FMCSA denied the carrier's petition for administrative review but did not address the carrier's claim that toll receipts provided unreliable evidence of driving history. *Id.* at 1134. The D.C. Circuit held that the agency was obligated to address the carrier's toll receipts assertion, noting that if the carrier were correct, then the agency might have to assign it a "satisfactory" safety rating. *Id.* at 1134–35; *see* 49 C.F.R. Pt. 385 App. B, § III.

By contrast, FMCSA's assignment of an "unsatisfactory" safety rating to Multistar was not based on the violations challenged in Multistar's petition for administrative review. Multistar provides no basis—and we can conceive of

none—for concluding that there is a regulatory or statutory requirement that FMCSA address the merits of an allegation that, even if valid, could not have affected the agency's final action.

Transforming the same argument into a constitutional one grounded in a denial of due process does not assist Multistar. The Due Process Clauses of the Fifth and Fourteenth Amendments protect against "depriv[ations] of life, liberty, or property." Any procedural due process analysis must be preceded by a showing that such a deprivation has occurred. *See, e.g.*, *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011); *Kildare v. Saenz*, 325 F.3d 1078, 1085–86 (9th Cir. 2003).

As FMCSA concedes, its order requiring Multistar to cease operations constitutes a deprivation of Multistar's property interests. But, as noted, *that* final agency action did not rest on violations 5 and 11.[10] Whether the agency reached the merits of Multistar's substantive challenges, therefore, had no bearing on the deprivation Multistar suffered.

The Supreme Court's decision in *Codd v. Velger*, 429 U.S. 624 (1977) (per curiam), is instructive in this regard. *Codd* involved the termination of a non-tenured police officer who asserted that information about an attempted suicide that was placed by the City Police Department in his personnel file was sufficiently stigmatizing to warrant a hearing under procedural due process principles. *Id.* at 625–26. The Court declined to reach the merits of the officer's due process claim, however, because "[n]owhere in his pleadings or elsewhere ha[d] [the officer] affirmatively asserted that the

---

[10] *See supra* Part III.A.

report of the apparent suicide attempt was substantially false." *Id.* at 627.  Because the officer did not challenge the validity of any underlying deprivation, the Court explained, "no hearing would afford a promise of achieving th[e] result [sought by] him," *i.e.*, the "opportunity to clear his name." *Id.* at 627–28.  Here too, the procedural protection that Multistar seeks—a decision by the agency on the merits of its substantive challenges to violations 5 and 11—would not affect "the legitimacy of the underlying deprivation," *i.e.*, the requirement to cease operations.  *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 944 (10th Cir. 2003) (discussing *Codd*).

Beyond the order to cease operations, Multistar has made no attempt to identify the property interest at stake, or to explain how it was deprived of any property right.[11]  It has therefore not raised a cognizable claim of deprivation of due process.

Finally, the agency's denial of administrative review did not, as Multistar alleges, deprive the carrier of a forum to contest violations 5 and 11 if and when they become the basis for an adverse order.[12]  Under 49 C.F.R. § 385.17(a), a motor carrier may seek an upgrade of its safety rating "at any time." Along with its upgrade request, a carrier may submit any "other documentation the carrier wishes the FMCSA to consider," including challenges to agency findings that the

---

[11] We are assuming that the due process concerns Multistar raises in passing would have to be rooted in a property right, as no impact on "liberty" or "life" has been suggested.

[12] Multistar does not argue it has any other protectible interest in receiving a decision on the merits of its challenges to violations 5 and 11.

carrier has not "taken action to correct." *Id.* § 385.17(a)–(c). As noted, in evaluating an upgrade request, FMCSA is required to "determine[] [whether] the motor carrier has taken the corrective actions required *and* [whether] its operations currently meet the safety standard and factors specified in §§ 385.5 and 385.7." *Id.* § 385.17(h) (emphasis added).

Since filing its briefs in this case, Multistar has availed itself of this process, and has received a first-level substantive decision from the agency as to its challenges to violations 5 and 11. Multistar may, within 90 days of the agency's denial of its latest upgrade request, seek further administrative review pursuant to §§ 385.15(a). *See also id.* §§ 385.15(c)(2), 385.17(j). That review may result in a final agency decision as to the challenged violations, a decision that has not heretofore occurred.

In short, Multistar has received all of the process it was due with regard to the contested violations, and FMCSA's denial of Multistar's petition for review was not arbitrary or capricious. Accordingly, we deny Multistar's petition for review as to the due process issue.

**DISMISSED in part and DENIED in part.**