**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

K. J., a minor, by and through his
guardian ad litem, Kasey L. Johnson,

      *Plaintiff - Appellant*,

  v.

Doctor LAMONT A. JACKSON, in
his individual capacity and official
capacity as Interim Superintendent of
the San Diego Unified School
District; CHUCK PODHORSKY;
JOE CAVAIOLA, in his individual
capacity and official capacity as vice
principal of La Jolla High School,

      *Defendants - Appellees*.

No. 23-3052

D.C. No.
3:22-cv-00244-
DMS-DDL

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted November 4, 2024
Phoenix, Arizona

Filed February 11, 2025

Before: Richard A. Paez, Marsha S. Berzon, and John B.
Owens, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Procedural Due Process/Qualified Immunity

The panel reversed the district court's summary judgment for public school administrators and remanded in an action brought by high school student K.J., through his guardian ad litem, alleging that defendants violated his right to procedural due process when they extended his school suspension (for fighting at school) without informing him of the new charges or evidence that formed the basis of the extended suspension (willfully causing serious injury not in self-defense).

The district court held that although defendants violated K.J.'s procedural right to due process, they were entitled to qualified immunity from damages because the law was not clearly established on whether students are entitled to due process protections when a suspension is extended. The district court further held that K.J. lacked Article III standing to seek expungement of his disciplinary record because it was only speculation that the disciplinary record would harm his reputation or future prospects.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel agreed with the district court that defendants violated K.J.'s due process rights. K.J. had a property interest in his education under California law that was protected by the Fourteenth Amendment's Due Process Clause. The suspensions deprived K.J. of that interest. Because defendants never informed K.J. of the new charges and new evidence that formed the basis of the extended suspension, he did not have a meaningful opportunity to present his side of the story regarding those charges.

Defendants were not entitled to qualified immunity because the unlawfulness of their conduct was clearly established in *Goss v. Lopez,* 419 U.S. 565 (1975). Here, K.J.'s suspension was not extended based on the same alleged conduct as his initial suspension. Rather the extended suspension was essentially a second suspension based on new alleged conduct and a new charge. The procedures delineated in *Goss* clearly apply to suspension extensions based on new charges or new evidence. K.J.'s rights were sufficiently definite under *Goss* such that any reasonable official in the defendant's shoes would have understood that he was violating them.

The panel held that K.J. may seek expungement of any records of the suspension extension and expulsion recommendation. Expungement was not barred by Eleventh Amendment sovereign immunity because it was a form of prospective relief that K.J. could receive under the *Ex Parte Young* doctrine. K.J. had standing to seek injunctive relief at the time he filed his complaint, and his claim for injunctive relief was not moot because expungement remains a form of meaningful prospective relief. The panel remanded to the district court to consider K.J.'s claim for expungement in addition to his claim for damages.

## COUNSEL

Goriune Dudukgian (argued), California Justice Project, Pasadena, California, for Plaintiff-Appellant.

Michael C. Sullivan (argued), Matthew W. Burris, and Briana M. Antuna, Quarles & Brady LLP, San Diego, California, for Defendants-Appellees.

## OPINION

PAEZ, Circuit Judge:

"[I]t would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his dereliction and to let him tell his side of the story in order to make sure that an injustice is not done." *Goss v. Lopez*, 419 U.S. 565, 580 (1975). Fifty years ago, *Goss* articulated the due process rights of a student facing suspension—oral or written notice of the charges against him, an explanation of the evidence the authorities have, and an opportunity to present his side of the story. *Id.* at 581. We write today to stress what has long been clearly established: public school officials must comply with *Goss* when imposing a suspension, including an extension of an existing suspension based on new allegations or new evidence of misconduct.

We agree with the district court that Defendants violated K.J.'s due process rights in extending his suspension without giving him an opportunity to be heard on the charges and evidence against him. We also hold, reversing the district court, that (1) K.J.'s damages claims are not barred by

qualified immunity because his rights were clearly established in *Goss*, and (2) K.J. may seek expungement of any records of the suspension extension and expulsion recommendation from his disciplinary file. We therefore remand this case to the district court for consideration of K.J.'s claims for damages and expungement.[1]

## I.

## A.

On February 4, 2022, a lunchtime fight broke out on La Jolla High School's ("LJHS") campus. All students involved—after each meeting with various administrators and submitting a written statement about the incident—were suspended for "fighting at school" and sent home that day. K.J. was one of these students and was suspended for three days. In his handwritten statement, he described how another student had been bullying him because of his race; this student had used the "n word with a hard r," "said he hates minority's [sic]," and called K.J. a "monkey." K.J. wrote, about the fight, that after he asked this student why he was being racist, this student and/or his friend "shoved [K.J.] into the wall" and "started [k]neeing [him] in the face." K.J.'s friend(s) then intervened to "help" K.J.

At some point after K.J. was sent home from school, Joe Cavaiola, one of the vice principals, watched surveillance

---

[1] Defendants raise again on appeal their argument that Superintendent Jackson is not a proper defendant in either his official or personal capacity. Because "we believe the decisionmaking process will benefit from having the district court 'make these determinations in the first instance,'" we also remand for consideration in the first instance whether Superintendent Jackson is a proper defendant. *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 802 (9th Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

videos of the end of the fight that occurred outside the gym and learned that one of the students involved in the fight suffered injuries. Although he later admitted that it was "impossible for [him] to know" from the available footage which student caused the alleged injuries, based on these new details, Cavaiola decided that one student—K.J.—did not just participate in the fight but "*willfully* caused *serious injury*" to another person not in "self-defense." So, on February 7, the night before K.J. was set to return to school, Cavaiola called K.J.'s mother to let her know that school officials decided to extend K.J.'s suspension and were recommending that he be expelled from LJHS.**[2]** K.J. was not on this call.

The next day, Cavaiola sent K.J.'s parents an email, summarizing:

> Upon further review of the closed circuit camera campus footage on Friday, 2/4/22, the [San Diego Unified School District ("SDUSD")] team is extending [K.J.'s] school suspension from three days to five days.[3] Due to the nature of the sustained

---

[2] California Education Code § 48911(g) governs school officials' authority to extend students' suspensions in these circumstances. School officials cannot directly expel a student. They can only recommend expulsion to the school district's governing board, which has the sole authority to order the student expelled. *See id.* § 48915. School officials may, however, extend a student's suspension until the governing board of the school district has rendered a decision on the proposed expulsion, subject to certain requirements. *Id.* § 48911(g).

[3] Although the suspension was listed as five days, a SDUSD counselor confirmed that K.J. could not return to LJHS until the SDUSD governing board decided on his expulsion.

injuries (during the Friday, 2/4/22 altercation) [K.J.] has been recommended for expulsion from LJHS. During this time, [K.J.] is not allowed to be on the LJHS campus nor participate in/attend any LJHS events. I have attached the updated suspension/expulsion paperwork. Your next step is to communicate directly to the Placement and Appeal Department.

In response, K.J.'s parents met, as instructed, with a counselor from the SDUSD Placement and Appeal Department to discuss the expulsion process and their rights. K.J. did not attend, as he was not required to be at nor was he invited to this meeting. His parents were also not allowed to present any defense to the factual allegations underlying the suspension and recommended expulsion at this meeting. At no point did school officials communicate with K.J. about the extended suspension.

The day after that meeting, this lawsuit was filed. Five days later, SDUSD rescinded the recommendation for K.J.'s expulsion, ending the extended suspension and allowing K.J. to return to school. From the time K.J. was suspended on February 4 to his return to school on March 1, no one from SDUSD or LJHS ever communicated with K.J.[4] Although K.J.'s mother knew that K.J.'s suspension had been extended on the basis of a new allegation, there is no evidence in the record that the medical reports or the videos Cavaiola relied on were provided or explained to her, let alone to K.J.

---

[4] At his deposition, Cavaiola confirmed that he did not try to call K.J. at his home and that he did not e-mail K.J. any documents to his school email address.

Although K.J. has since returned to school, and his expulsion recommendation has been withdrawn, his February 8 "Report on Suspension" remains in his internal disciplinary file within his student record. This report lists both the extended suspension and the expulsion recommendation for "willfully" causing "serious" injury not in "self-defense." Prior to the February 4 fight, K.J. had no history of school discipline. SDUSD administrators, LJHS administrators, school counselors, and K.J.'s specific teachers have access to his disciplinary file. And while the information in his file is not provided to colleges, universities, or potential employers without K.J.'s consent, K.J. would likely need to self-report any disciplinary violations on applications for higher education or employment.

**B.**

On February 23, 2022, K.J., by and through his guardian ad litem Kasey Johnson, filed a complaint in the district court, asserting a single cause of action under 42 U.S.C. § 1983. He alleged that defendants Lamont Jackson (Superintendent of SDUSD), Chuck Podhorsky (Principal of LJHS), and Joe Cavaiola (Vice Principal of LJHS), acting under color of state law, violated his right to procedural due process guaranteed by the Due Process Clause of the Fourteenth Amendment.

The district court granted Defendants' motion for summary judgment. The district court agreed with K.J. that Defendants violated his procedural due process rights under *Goss*. The district court nonetheless entered judgment for Defendants. First, it held that Defendants were entitled to qualified immunity from damages because the law was not clearly established on "whether students are entitled to due

process protections when a suspension is extended." Second, it held that K.J. lacked Article III standing to seek expungement of his disciplinary record, the only other relief sought, because it was only "speculation" that the disciplinary record would harm his reputation or future prospects. Because the district court granted Defendants summary judgment, it declined to address their argument that Superintendent Jackson is an improper defendant. This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's grant of summary judgment. *See Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(c).

## III.

### A.

We first determine whether Defendants violated K.J.'s due process rights. We agree with the district court that they did. A state may not deprive persons of "life, liberty, or property" without "due process of law." U.S. Const. amend. XIV, § 1. There are three elements of a procedural due process claim under 42 U.S.C. § 1983: (1) "a liberty or property interest protected by the Constitution," (2) "a deprivation of the interest by the government," and (3) a "lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

There is no dispute that K.J. had a protected interest in his education at LJHS. Property rights are "defined by reference to state law," *id.*, and in California, the right to a public education is a fundamental constitutional right, *see* Cal. Const. art. IX, § 5; *Butt v. California*, 842 P.2d 1240, 1248 (Cal. 1992). When a state chooses to extend a right to education, it is "constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss*, 419 U.S. at 574.

There is also no dispute that suspensions constitute deprivations of K.J.'s protected interests. Here, Defendants first suspended K.J. for three days and then effectively for an indeterminate period because Defendants recommended K.J.'s expulsion and prohibited him from returning to school while the recommendation was pending before the SDUSD governing board. K.J. was ultimately excluded from LJHS's campus for sixteen days. As explained in *Goss*, "education is perhaps the most important function of state and local governments, and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child." *Id.* at 576 (internal quotations and citation omitted). And, because school suspensions can "seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment," such suspensions also constitute deprivations of a protected liberty interest. *Id.* at 575.

Defendants dispute, however, the process K.J. was due before they imposed the additional suspension extension.

Defendants argue that because they met with K.J. on February 4, the day he was initially suspended, K.J. had already received an opportunity to share his account of what happened in the fight.  K.J., by contrast, argues that *Goss* requires that school officials provide him with (1) "oral or written notice of the charges against him," (2) "an explanation of the evidence the authorities have," and (3) "an opportunity to present his side of the story."  *Id.* at 581.  K.J. argues that Defendants failed to comply with these requirements by extending his suspension from LJHS without obtaining his response to whether he had "willfully" caused "serious" injury to anyone, a new allegation based on new evidence.  *Id.*

We agree with K.J.  Because Defendants never informed K.J. of the new charges and new evidence that formed the basis of the extended suspension, he did not have a meaningful opportunity to present his side of the story regarding those charges and that evidence in his initial February 4 meeting with school administrators.  *See id*.  The new charge was not a mere formal or technical change.  Instead, as a justification for extending his suspension, K.J. was accused for the first time of "willfully" causing "serious injury" not in "self-defense."  As K.J. argued before the district court, the "alleged conduct changed significantly between the first and second suspensions," so he "did not have the opportunity on February 4, or at any time thereafter, to defend himself against these much more serious allegations" underlying the additional suspension.  Additionally, K.J. was never given an "explanation of the evidence the authorities" had that formed the basis of his additional suspension.  *Id.*  In fact, on February 4, the only time Cavaiola interviewed K.J. about the fight, Cavaiola did

not know about the medical report or what the video footage showed.

Without knowing both "what he [was] accused of doing" and "what the basis of the accusation [was]," K.J. did not have "an opportunity to explain his version of the facts," *id.* at 582, as to the "willfully causing serious injury" charge during that initial meeting. And, because Defendants did not communicate with K.J. at any point thereafter, K.J. never had an opportunity to present his side of the story in response to that charge and the consequent decision to extend his suspension. These "rudimentary procedures" are the bare minimum and even less than the "more formal procedures" that *Goss* suggests may be required for suspensions, like K.J.'s, that exceed ten days. *Id.* at 584.

Finally, it is of no consequence that K.J. faced a suspension extension, rather than an original suspension. The fact remains that on February 8, K.J. was effectively given an additional suspension based on charges and evidence that he never had an opportunity to address.[5] *See id.* at 582 ("[I]n being given an opportunity to explain his version of the facts at this discussion, the student [must] first be told what he is accused of doing and what the basis of the accusation is."). We therefore agree with the district court that Defendants violated K.J.'s constitutional rights.[6]

---

[5] *Goss* requires that "*the student* be given" notice of the charges, an explanation of the evidence, and an opportunity to present his side of the story. 419 U.S. at 581 (emphasis added). Even if notifying K.J.'s parents could have given K.J. notice of the new charges, it is clear from the record that K.J. never had an opportunity to address the new charges and evidence.

[6] We do not reach the issue of whether solely an extension of the period of a prior suspension, with no reliance on new allegations or new

**B.**

Even if Defendants violated K.J.'s constitutional rights, they would be entitled to qualified immunity and shielded from personal liability unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[F]or a right to be 'clearly established,' the 'right's contours' must have been 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Spencer v. Pew*, 117 F.4th 1130, 1138 (9th Cir. 2024) (emphasis omitted) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)). We hold that Defendants are not entitled to qualified immunity because the unlawfulness of their conduct was clearly established in *Goss*.

The district court held that Defendants were entitled to qualified immunity because there were no precedential cases governing these facts. It held that "*Goss* does not explicitly address the more precise issue in this case, which is whether students are entitled to a second round of due process protections if an initial suspension is extended." Similarly, Defendants suggest that there is no clearly established "legal obligation to allow Appellant to retell his story a second time."

Setting aside that "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see Rieman v. Vazquez*, 96 F.4th 1085, 1094 (9th Cir. 2024), *Goss* clearly governs these facts. In concluding otherwise,

---

evidence, requires the school to provide new notice or another opportunity to be heard.

both the district court and Defendants inaccurately describe what occurred. Here, K.J.'s suspension was not extended based on the same alleged conduct. When K.J. was first suspended, he was accused of "[c]aus[ing], attempt[ing], or threaten[ing] to cause physical injury." Under this charge, he could have simply been suspended for being in a school fight, even if he did not physically harm someone. He was also not charged with willfully doing anything, whether willfully causing a minor injury or willfully causing a serious injury. His extended suspension was essentially a second suspension based on new alleged conduct and a new charge: "willfully caus[ing] serious injury except in self-defense." At this point, Defendants were accusing K.J. of being the one who intentionally injured another person. Although K.J. had the opportunity to explain his side of the story with regards to the first charge, he did not have the "opportunity to characterize his conduct and put it in what he deems the proper context" with respect to the second, more serious charge. *Goss*, 419 U.S. at 584. In response to the new charge, he did not have an opportunity to deny the allegation that it was he who caused the injury, disclose who in fact caused the injury, or explain that he caused the injury solely in self-defense.

Under *Goss*, K.J. was entitled to hear the new accusation, learn the basis for that accusation, and be given an opportunity to explain his version of the facts as to that accusation. *See id.* at 582; *see also id.* at 580 n.9 (noting a student "was never told the basis for the principal's belief that he was involved" in the misconduct, and that school officials may not make "the decision that misconduct had occurred without at some meaningful time giving [the student] an opportunity to persuade [them] otherwise"). On February 4, the only time school officials spoke to K.J. about

the fight, K.J. was not notified of the accusation underlying his February 8 additional suspension—"willfully" causing "serious" injury—or what the basis of that accusation was— the video evidence and medical reports. There can therefore be no serious suggestion that K.J.'s February 4 hearing satisfied the due process requirements for the February 8 suspension extension. He was thus not asking for a "second round of due process protections," but merely what *Goss* minimally requires.

Defendants nonetheless argue that because the basis of the suspension extension was "not a new event," *Goss* does not apply. But the procedures delineated in *Goss* clearly apply to suspension extensions based on new charges or new evidence. *Goss* states that due process rights attach to each suspension, and for any suspension, a student is owed certain process. *Id.* at 581. A suspension extension is still a suspension from school, and a suspension extension based on new allegations or new evidence is effectively a second suspension. It is irrelevant that the suspension and suspension extension arose from the same event. *Goss* requires notice of the "*charges*" against a student as well as an "explanation of the *evidence* the authorities have," not simply a description of the event in question. *Id.* (emphasis added). *Goss*'s unambiguous focus is on the charges and evidence—the case—against the student and an opportunity to respond to that case. *Id.* at 580. As *Goss* forcefully recognizes, "[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Id.* (internal quotations and citations omitted).

We are also not persuaded that *Goss*'s requirements have been modified or limited by any subsequent decisions. Defendants point principally to *C.R. v. Eugene School District 4J*, 835 F.3d 1142 (9th Cir. 2016) and *Wynar v. Douglas County School District*, 728 F.3d 1062 (9th Cir. 2013). These cases confirm, not limit, *Goss*'s fundamental requirements. In *Wynar*, we held that school officials are not constitutionally required to specify the "*specific* rules, policies, or procedures that are alleged to have been violated." *Wynar*, 728 F.3d at 1072-73 (emphasis in original). Similarly, in *C.R.*, we held that *Goss* does not require a notice of charges to include a "bill of particulars." *C.R.*, 835 F.3d at 1154. We nonetheless required officials to comply with *Goss*'s minimum requirements to give students facing suspension "notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 1153 (quoting *Goss*, 419 U.S. at 581); *Wynar*, 728 F.3d at 1072 (same). In both *C.R.* and *Wynar*, unlike here, the student conceded that he received informal notice of the charges against him and, through multiple interviews, an opportunity to tell his side of the story. *See Wynar*, 728 F.3d at 1072; *C.R.*, 835 F.3d at 1146-48, 1153. The cases are therefore inapposite.

In sum, K.J.'s rights were "sufficiently definite" under *Goss* such that "any reasonable official in the defendant's shoes would have understood that he was violating [them]." *Plumhoff*, 572 U.S. at 778-89. [7] It is "beyond debate,"

---

[7] Additionally, under SDUSD's administrative regulation AR 5144.1(a), which governed Defendants' conduct in February 2022, any "extension of the original period of suspension" must be preceded by an offer to hold a conference "giving the student an opportunity to be heard" as part of "due process." Although internal regulations do not necessarily

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), that for any suspension K.J. faced, he was entitled to (1) "oral or written notice of the charges" underlying the suspension, (2) "an explanation of the evidence the authorities have" in support of that charge, and (3) "an opportunity to present his side of the story" in response to the case against him, *Goss*, 419 U.S. at 581. There can be no serious question that K.J.'s suspension extension on February 8 constituted a suspension. After all, it is the very reason K.J. could not return to school on February 8 after completing his original three-day suspension. There is additionally no dispute that Defendants never heard from K.J., on February 4 or anytime thereafter, about the new charge and the evidence underlying the February 8 suspension extension. Because *Goss* clearly requires "the student first be told what he is accused of doing and what the basis of the accusation is," and it is clear that K.J. never had an opportunity to be heard regarding the new charge underlying the suspension extension, Defendants violated his clearly established rights under *Goss*. *Id.* at 582. We therefore reverse the district court's grant of qualified immunity.

---

reflect constitutional requirements, their interpretation of constitutional requirements can be relevant to whether officials had a "fair warning" of the unconstitutionality of their conduct. *See Hope*, 536 U.S. at 743-45 (relying on an administrative regulation to buttress its conclusion that a reasonable person would have known the disputed practice was unconstitutional); *cf., e.g.*, *Vazquez v. County of Kern*, 949 F.3d 1153, 1164-65 (9th Cir. 2020) ("Training materials and regulations are also relevant, although not dispositive, to determining whether reasonable officers would have been on notice that their conduct was unreasonable.").

## C.

We also conclude that K.J. may seek expungement of any records of the suspension extension and expulsion recommendation. In so concluding, we first hold that such expungement is not barred by Eleventh Amendment sovereign immunity. We also hold that K.J. had standing to seek injunctive relief at the time he filed his complaint, and that his claim for injunctive relief is not moot because expungement remains a form of meaningful prospective relief.

As an initial matter, the "Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999).[8] The *Ex Parte Young* doctrine avoids any Eleventh Amendment bar to suit when private individuals "sue state officials in federal court for prospective relief from ongoing violations of federal law, as opposed to money damages." *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (emphasis omitted); *Ex Parte Young*, 209 U.S. 123 (1908). The district court correctly held that expungement of information from school records was a form of prospective relief that K.J. could receive under

---

[8] We have held that California public school districts are "to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (quoting *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1180 (9th Cir. 2003)). We take no position on whether this holding should be revisited given our new test for evaluating whether an entity is an arm of the state under the Eleventh Amendment. *See Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 1465 (2024). In any case, K.J.'s request for expungement falls within the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity.

the *Ex Parte Young* doctrine. *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (holding that injunctive relief expunging disciplinary information from university records "cannot be characterized solely as retroactive injunctive relief and [is] not barred by the Eleventh Amendment"); *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1226 (9th Cir. 2023) (holding that expungement of negative information from school records is a form of prospective relief that plaintiffs can seek under *Ex Parte Young*). There is therefore no Eleventh Amendment bar to K.J.'s request for expungement.

We next consider the district court's determination that K.J. lacked standing to seek expungement. The district court confused Article III's standing and mootness requirements. Both "standing and mootness are jurisdictional issues deriving from the requirement of a case or controversy under Article III." *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1098 (9th Cir. 2000). "[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680 (9th Cir. 2023) (en banc). By contrast, "[t]he central question for mootness is whether changes in the circumstances that prevailed at the beginning of litigation," such as the withdrawal of K.J.'s expulsion recommendation and his subsequent return to school, "have forestalled any occasion for meaningful relief." *Meland v. Weber*, 2 F.4th 838, 849 (9th Cir. 2021) (internal quotations and citation omitted). K.J. had standing to challenge his ongoing suspension at the time he filed his complaint, and expungement would afford K.J. meaningful relief now. We therefore hold that K.J. may seek an expungement order.

First, K.J. had standing to challenge the constitutionality of his ongoing suspension on February 23, 2022, when he filed the complaint. Article III standing consists of three elements: (1) the "'plaintiff must have suffered an injury in fact'" that "'is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'"; (2) "the injury must 'be fairly traceable to the challenged action of the defendant'"; and (3) "it must be 'likely' that the injury is redressable by a favorable decision." *Fellowship of Christian Athletes*, 82 F.4th at 680 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up)).

When a plaintiff alleges a procedural injury, he need only show that the procedures are "designed to protect some threatened concrete interest." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003) (citation omitted); *Lujan*, 504 U.S. at 573 n.8. K.J. has done so here. The procedures required by the Due Process Clause protect K.J.'s concrete interests in his education and reputation. *See Goss*, 419 U.S. at 575-76 (recognizing that a suspension is a "serious event in the life of the suspended child" and could "seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment"); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (recognizing "reputational harms" as concrete injuries).

Once a plaintiff establishes such a concrete interest, his "burden to establish the other two standing elements— causation and redressability—is lessened." *Multistar Indus., Inc. v. U.S. Dep't of Transp.*, 707 F.3d 1045, 1054 (9th Cir. 2013). A plaintiff alleging a procedural violation must "show only that [he has] a procedural right that, if exercised, *could* protect [his] concrete interests." *Salmon Spawning &*

*Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) (emphasis in original) (citation omitted). Here, the "possibility" that an explanation of the evidence or an opportunity to be heard on the more serious charges[9] would have prevented K.J.'s continued suspension "meets the causation and redressability factors applicable to such procedural claims." *Multistar Indus.*, 707 F.3d at 1054. K.J. therefore had standing to challenge his unconstitutional suspension when he filed his complaint.

K.J. also had standing to pursue injunctive relief at the time he filed his complaint. *See TransUnion*, 594 U.S. at 431 ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."). Because K.J. was still suspended and unable to return to LJHS when he filed his complaint, he was facing the "continuing, present adverse effects" of his "[p]ast exposure to illegal conduct"— namely, Defendants' unconstitutional suspension extension. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). He could thus seek injunctive relief to stop those effects, such as an order allowing him to return to school pending expulsion proceedings or an order providing him with an opportunity to be heard regarding the suspension extension and recommended expulsion. We therefore have no trouble concluding that K.J. had standing to pursue a claim for injunctive relief when he filed his complaint.[10]

---

[9] For example, Cavaiola admitted in his deposition that it was "impossible" to know from the surveillance videos whether K.J. or another student caused the alleged injuries.

[10] In holding that K.J. had standing to seek injunctive relief, we do not suggest that there would not be standing in a suit filed solely for

Since K.J. filed this lawsuit, however, Defendants have withdrawn K.J.'s expulsion recommendation, and K.J. has returned to school. Much of K.J.'s claim for prospective relief is thus moot. The February 8 "Report on Suspension," however, remains in K.J.'s disciplinary file, and he now seeks[11] expungement of any information about the February 8 suspension extension and expulsion recommendation from his school record. His disciplinary file is accessible to administrators, counselors, and K.J.'s teachers at LJHS. *See Goss*, 419 U.S. at 575 (explaining that reputational harm associated with a disciplinary record includes the harm to one's reputation with teachers). K.J. would also likely need to disclose the information in his disciplinary file on college applications. K.J.'s claim is therefore not moot.

"The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide." *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*, 232 F.3d 1300, 1303 (9th Cir. 2000). Under *Flint*, expungement of unconstitutional disciplinary action from school records "is certainly a form of meaningful relief." 488 F.3d at 824 (internal quotations and citations omitted). We recognized in *Flint* that "[w]hen a student's record contains negative information derived from allegedly unconstitutional school [acts,] . . . that information may jeopardize the student's

---

expungement of school disciplinary records, as that issue is not before us.

[11] K.J. did not specifically pray for expungement in his original complaint. Federal Rule of Civil Procedure 54(c), however, provides that final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

future employment or college career." *Id.*[12]  "So long as a []
student's record contains evidence of disciplinary sanctions,
and the [] student seeks an order requiring school officials to
expunge from school records all mention of the disciplinary
action, the action is not moot." *Id.* (internal quotations and
citation omitted).  K.J. may thus seek such relief.

Defendants argue that K.J. would need to "disclose
information relating to the on-campus fight and initial,
subsequent suspension" in any case.  There is, however, a
significant difference between being part of a school fight
and receiving a three-day suspension and willfully causing
serious injury and facing potential expulsion.  As noted, K.J.
also faces reputational harm, as his teachers, including future
teachers, will have access to the disciplinary file, which
charges him with willfully causing serious injury to another
person.  Though K.J. may need to disclose that he was
involved in a school fight, the unconstitutional extension of
the suspension includes new and more serious allegations,
and an expungement order would remove that new charge
from his school record.

Because K.J. had standing when he filed his complaint,
and because expungement remains a form of meaningful
relief, we remand to the district court to consider K.J.'s claim
for expungement in addition to his claim for damages.

**REVERSED and REMANDED.**

---

[12] *Flint* did not require the student to submit specific evidence to this
effect.  Indeed, a threat of future harm "may be too speculative to support
standing, but not too speculative to overcome mootness." *Friends of the
Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 190 (2000).